NEBRASKA UNDERWRITERS' INSURANCE COMPANY v. FOUKE.

Opinion delivered April 26, 1909.

1. NEGLIGENCE—FIRE—INSTRUCTION.—Where there was evidence tending to prove that defendants' servant negligently set fire to plaintiffs' house while engaged in removing paint with a blow lamp, it was error to refuse to instruct the jury as follows: "If you find that the defendants or their employee undertook by means of a lighted lamp to remove the paint on the dwelling house in question on a windy day, and that it was negligent for said defendant or their employee to

use said lamp on said building on a windy day, and by reason of said negligence the plaintiffs suffered damage, then you will find for the plaintiffs." (Page 250.)

2. Instructions—specific and general.—The court's refusal to give a specific instruction correctly applying the law to the facts of a case was erroneous, although the law was covered by a general instruction given, and will be taken to be prejudicial unless the contrary appears. (Page 251.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; reversed.

*Frank S. Quinn* and *Richard M. Mann,* for appellants.

1.   When a thing which has caused an injury is shown to have been under the management or control of the defendant, and the accident is such as in the ordinary course does not happen if proper care is used, the accident itself affords reasonable evidence, if unexplained, that it arose from want of proper care. Shearman & Redfield, Neg. § § 59, 60; Thompson, Neg. § § 15, 770; 21 Am. & Eng. Enc. of L. 2d Ed. 512.   Proof of the accident and that its occurrence was out of the ordinary course makes a *prima facie* case of negligence, and the burden is on the defendant to explain it and show that it could not have been prevented by the use of ordinary care.   54 Ark. 209; 57 Ark. 428; 77 Ark. 1; 56 N. E. (Ind.) 434; 82 N. E. 1025; 63 Ark 491; 140 U. S. 435 (35 L. Ed. 458).

2.   There was proof that it was a windy day, and the complaint charged negligence in attempting to remove the paint with a blow lamp on such a day.   Appellants were entitled to the specific instruction requested by them, covering this theory of the case.   22 Mo. 150; 64 Am. Dec. 259; 21 L. Ed. (N. S.) 672.

*Webber & Webber,* for appellees.

1.   Appellants' statement of the rule *"res ipsa loquitur"* shows it has no application here.   The uncontroverted proof is that *proper care was used,* and the defective flue affords a sufficient explanation.   But if the rule is applicable it does not cast upon defendants the burden of proof in the sense that they are bound to establish freedom from negligence by a preponderance of evidence.   163 N. Y. 447; 57 N. E. 751; 16 L. R. A. (N. S.) 527.   This case does not fall within the exceptions to the rule that negligence must be proved.   15 L. R. A. 33, note; 184 Pa.

519; 41 L. R. A. 478. See also 6 Thompson on Neg. § § 7635, *et seq.; Id.* § 7651; 21 L. R. A. 256 *et seq.*

2. While there is some slight evidence tending to show that it was a windy day, it was not definite; but, on the contrary, it is positively shown that it was not a windy day, and that the wind would not have made the use of the lamp dangerous. The proof is clear that defendants exercised proper care. The law does not make them insurers of others against those consequences of their actions which reasonable care and foresight could not have prevented. 6 Thompson, Neg. § 7640; 16 Ark. 329.

McCULLOCH, C. J. W. C. Josey, one of the plaintiffs in this action, occupied as his dwelling place a house in the city of Texarkana, Arkansas, owned by one Hill, and held a policy of fire insurance on his household goods issued to him by his co-plaintiff, the Nebraska Underwriters Insurance Company. The goods were destroyed by fire, alleged to have been negligently set out by an employee of the defendants, who are painters, and were engaged in repainting the house. The insurance company paid Josey the amount of his loss on account of the fire, and took an assignment of his claim against defendants by reason of the alleged negligence of their employee, and both join in this action against the defendants to recover the amount of the damage. A trial by jury resulted in a verdict and judgment in favor of the defendants, and the plaintiffs appealed.

The owner of the house employed defendants to repaint it, and they did so. Shortly afterwards he became dissatisfied with the work, and demanded that they remove the paint from a space about twelve by fourteen feet on the south end of the house and repaint it. Defendants agreed to do this. In order to remove the paint from the space, it was necessary to burn it off with a blow lamp. Such a lamp is used, according to the evidence, by applying the flames to the wood surface and following it with a putty knife and scraping off the paint while it is heated by the flame. This is a dangerous operation, and care must be exercised to avoid holes or cracks in the wood surface so as not to force the flames through and set out fire behind the weatherboarding. Defendants sent one of their employees to do the work, and while he was so engaged the house caught fire somehow inside the weatherboards. The testimony is conflicting as to whether or

not the fire was communicated from the lamp, and a finding either way on this issue would have been warranted. Defendants introduced testimony tending to show that there was a defective flue in the house, and that the fire could have resulted from that.

Error of the court is assigned in refusing to submit the question whether or not it constituted negligence to use a blow lamp, instead of employing some other means in removing the paint. We think that these instructions were properly refused, for the reason that there was no evidence on which to base them. The undisputed evidence is that this was the only practical method of removing the paint, and it was understood with the owner of the house that the work was to be done in that way. There was testimony to the effect that paint could be removed by use of a certain liquid, but that it was never used on outside work. All the testimony, even that of plaintiffs's own witnesses, was to the effect that the use of a blow lamp to burn and scrape the paint off was the customary method of doing such work. It was, however, shown to be dangerous work, especially in removing paint from old weatherboarding, and that extreme care should be exercised to prevent the flame being forced through cracks or holes.

The man who did the work for the defendants testified that he exercised care in handling the lamp, and that the fire in the walls or eaves of the house was discovered while he was testing his lamp and before he got it into operation. But we think there was evidence sufficient to warrant the jury in finding, if the fire was set out by the lamp, that it resulted from his negligence.

One of the charges of negligence contained in the complaint was that it was a very windy day when the work was done, and that it constituted negligence to use a blow lamp on such a day. The court refused to give the following instruction requested by plaintiffs:

"If you find that the defendants or their employee undertook by means of a lighted blow lamp to remove the paint on the dwelling house in question on a windy day, and that it was negligent for said defendants or their employee to use said lamp on said building on a windy day, and by reason of said negligence the plaintiffs suffered damage, then you will find for the plaintiffs."

We are of the opinion that there was evidence on which to base this instruction, and that it should have been given. One of the witnesses introduced by plaintiff testified that it was a very windy day, and that the wind came from the south, which would have carried the flame against the house. The man who did the work testified that the wind was not high that day, and that it came from another direction, which had a tendency to blow the flame away from the house. It is true that he says in one place in his testimony that the wind would have no effect on the flame; but the very next statement in his testimony is that the wind was blowing the flame from where he was working, and that it weakened the force of the flame. This was in conflict with the testimony of the other witness, who stated that the direction of the wind was toward the house, and if they believed him the jury might have concluded that the force of the flame against the house was augmented by the wind. Now, the jury might, if they had been permitted to consider this question, have concluded that the high wind from the south fanned the flame and made it harder to control, so as to keep it out of the cracks and overlap of the weatherboards, and that it constituted negligence to use the lamp during time of high wind. The evidence is not entirely satisfactory, but it is a curious coincidence that the house was discovered to be on fire inside the walls just at the time the flame of the lamp was being applied to the wall, and the jury should have been permitted to consider every phase of the case to which evidence was directed.

The refused instruction was a specific one; no other was given on the subject, and it was prejudicial error to refuse it. The court gave general instructions to the effect that defendants would be liable if the fire resulted from the use of the blow lamp, and the employee failed to exercise care in its use; but plaintiff was entitled to have a specific instruction on the subject. *St. Louis & S. F. Rd. Co.* v. *Crabtree,* 69 Ark. 134.

Other errors are assigned, but we find nothing else which would call for a reversal.

Reversed and remanded for a new trial.