OHIO HANDLE & MANUFACTURING COMPANY *v.* JONES.

Opinion delivered February 20, 1911.

1. INSTRUCTIONS—GENERAL AND SPECIFIC.—It is reversible error to refuse a specific instruction applying the law to the facts of the case, although the law is covered by general instructions, unless it affirmatively appears that no prejudice resulted. (Page 21.)

2. MASTER AND SERVANT—INSTRUCTIONS.—Where, in an action against a master for negligently causing the death of plaintiff's intestate, the defendant asked a proper and specific instruction to the effect that plaintiff can not recover unless defendant was negligent, a modification by the court which made the care due by the master to depend upon the decedent's contributory negligence was erroneous and misleading. (Page 22.)

Appeal from Craighead Circuit Court, Jonesboro District; *Frank Smith,* Judge; reversed.

*J. F. Gautney,* for appellant.

1.   The court erred in refusing to direct a verdict for appellant. There was no evidence of negligence; and where the facts are undisputed, and the minds of reasonable men could draw but one conclusion from them, the question of negligence becomes one of law.   61 Ark. 549, 555; 75 Ark. 406; 57 Ark. 503; 48 Ark. 575; 87 Ark. 190; 89 Ark. 50; 161 Mass. 153; 36 Law. Ed. 758.   Deceased was guilty of contributory negligence.   Had he made that use of his senses which the law requires of one engaged in a dangerous employment, the injury would not have occurred.  51 Ark. 46.

2.   By his modification of instruction 3D, the court changed the entire meaning of the instruction.   Its effect was to instruct the jury that they should find for the plaintiff unless they also found that the act of deceased in reversing the carriage was negligent.   71 Ark. 501.

*E. L. Westbrooke* and *E. H. Mathes,* for appellee.

HART, J.   Appellant prosecutes this appeal from a judgment for damages rendered against it in favor of appellee.   The undisputed evidence shows that on March 10, 1909, Geo. E. Jones was employed by appellant as sawyer at its mill, and was killed while in the performance of his duties as such sawyer.   The man who carried off the slabs or flitches as they were sawed was named Barnett.   We quote from appellant's abstract as follows:

"The machine consisted of a saw table 24 feet long, on which was set at a point about equidistant from the ends of the table a circular saw 54 inches in diameter, driven by steam power.   The table was about 4 feet wide, and the saw nearly in the center.   The table was so constructed that the saw carriage mounted upon it came flush with the opposite side of the table, or the side occupied by the offbearer.   The saw carriage was about 30 inches wide, and 12 feet long.   Jones stood on the right hand side of the table to the right, and four feet from the front of the saw.   Barnett, the offbearer, was on the opposite or left side of the table, about two and one-half or three feet to the rear of the saw.   Barnett testified:

"Jones cut the logs into slabs.   He would first take a slab off

the side of the log, then turn the log so that the flat side would rest upon the carriage and rip the log into planks.   The log on which he was working was 4½ or 5 feet long.   The log must have been half sawed when Jones was injured.   The log was perhaps 12 or 18 inches in diameter when Jones first began working on it. I was about 15 feet from Jones at the time he was injured.   Jones was killed by one of the pieces that had been sawed by him being caught in the saw carriage, drawn into the saw, and by the saw hurled against Jones."   On direct examination, witness testifies as follows:

"Q: He was not killed by the main log he was sawing? A. No, sir.   Q. He was killed by the piece that had been sawed, and had fallen over?   A. Yes, sir.   Q.   What caused it to strike him or go back where he was?   A.   Of course in sawing the flitches nearly always after they pass the saw, those short ones—very often they but little get past the saw.   Those saws are three and a half feet or something like that, and some of them larger than that, and the short timber, of course, one end of the flitches barely passes the saw, and then often the short pieces stand there until they run another flitch, and that pushes it on past so we can get hold of it.   When the flitch is turned loose, it is my business to take it up and pile it on the rack for the rip saw."

The slab, when it was sawed off the log, fell on the saw carriage, instead of on the table.   When the saw carriage was reversed, the slab was drawn against the rapidly revolving saw, and was thus hurled against Jones.   Usually the slab or the flitch falls on the table when it is sawed off the log, and is carried away by the offbearer.   It is usual when a slab falls on the table, and one end will rest against the saw, for it to remain there until it is pushed back by the next slab that comes through the saw. Counsel for appellant claim that the death of Jones was purely accidental, and that appellee is not entitled to recover.   We cannot agree with his contention.   The testimony shows that the offbearer could carry away the pieces of lumber as fast as they were sawed, and that it was his business to take them away whenever the saw turned them loose.   Just about the time Jones was struck, the attention of the offbearer was distracted by the rip-sawyer calling to him, and he had turned his head away to answer him.

There is a guard which hangs over the circular saw, made of a piece of plank 6 or 8 inches wide. It is right up over the saw, and is tipped with a piece of gum belting nailed on the lower end, to keep the saw dust from flying back.

Barnett further testified that nine times out of ten the slabs will fall on the table, instead of the carriage; that the sawyer stands facing the table looking at his work, and that there was nothing to hinder Jones from seeing that the slab fell on the carriage, instead of the table. Other evidence for appellant showed that it was the duty of the sawyer to see that his carriage is free from slabs when he reverses it; otherwise the chances are that some one will get killed by the slab striking the revolving saw. One witness testified that Jones was not looking at his carriage when he reversed it. Another said that there was a blower system in operation which carried away all the dust. On the other hand, an experienced sawyer, who has worked at appellant's saw mill, says there is some dust flying all the time; that the operation of the saw and the reversal of the carriage after the saw has gone through the log are so rapid that the dust does not all have time to be carried away or settle; that the sawyer couldn't see whether the slab fell on the table or carriage while the saw was running because it would fill his eyes with dust; that the sawyer's vision to the rear of the saw is practically obstructed all the time by the floating sawdust; that the size of the guard that hangs down above the saw is about 10 inches wide. Under these facts and circumstances, we do not think it can be said there is no legal evidence to support the verdict.

Taking into consideration that the slab fell behind the log that was being sawed, and was behind the saw and the guard hanging over it, and the further fact that particles of sawdust were continually floating around the saw, it cannot be said as a matter of law that Jones could, by the exercise of ordinary care, have seen that the slab or flitch fell on the saw carriage, instead of the table, had he been looking.

Among other instructions counsel for appellant asked the court to give the following:

"3D. If you find from the evidence that Barnett, the off-bearer, was taking the slabs or boards from the table in the usual and ordinary manner, and that one of the slabs or boards, after

being cut, fell on the carriage instead of on the table, that Barnett exercised ordinary care and diligence in attempting to remove said slab or board, but was prevented from so doing by the slab falling on the carriage, and the carriage being reversed so as to carry the board beyond his reach, and as a result of such failure on the part of Barnett, combined with the act of deceased in reversing the carriage, deceased was injured and died as a result of such injury, then you are instructed to find for the defendant.

"6D.   It is contended in this case that the negligence which caused the injury was that of a fellow servant of deceased; and unless you find by a preponderance or greater weight of the evidence that the injury and death of deceased were brought about by the negligence of Barnett, the offbearer, then you will find for the defendant.

"8D.   You are instructed that if you find from the evidence that the injuries and death of deceased were caused by an accident, and were not due to the negligence of Barnett, the fellow servant, then you will find for the defendant."

The court gave the two latter as asked, but modified the first named by making it read as follows:

"3D.   If you find from the evidence that Barnett, the offbearer, was taking the slabs or boards from the table in an ordinarily careful manner, and that one of the slabs or boards, after being cut, fell on the carriage instead of on the table, that Barnett exercised ordinary care and diligence in attempting to remove said slab or board and in discharging his duty in that behalf, but was prevented from so doing by the slab falling on the carriage and the carriage being reversed so as to carry the board beyond his reach, and as a result of such failure on the part of Barnett, combined with the act of deceased in reversing the carriage (which act of deceased you find was a negligent one as defined in these instructions), deceased was injured and died as a result of such injuries, then you are instructed to find for the defendant."

Counsel for appellant assigns as error the action of the court in modifying the instruction; and contends that the modification changes the entire meaning of the instruction. He insists that, if Barnett was not negligent, it would make no difference whether deceased was negligent or not.   It is well settled in this State that it is error to refuse a specific instruction applying the law to

the facts of the case, although the law is covered by general instructions, and such action is prejudicial unless the contrary appears. *St. Louis & San Francisco Rd. Co.* v. *Crabtree,* 69 Ark. 172; *Taylor* v. *McClintock,* 87 Ark. 243; *St. Louis & S. F. Rd. Co.* v. *Dyer,* 87 Ark. 531; *Nebraska Underwriters' Ins. Co.* v. *Fouke,* 90 Ark. 247.

The instruction as asked was the only instruction that presented appellant's whole case in a concrete form to the jury; and, as above stated, it had a right to have its case presented in this form, although the law in a general way had been given. To say the least of it, the modification nullified the whole instruction, and rendered it meaningless as a specific instruction. We refer to the clause, "which act of deceased you find was a negligent one as defined in these instructions."

The question of negligence or not of a defendant is wholly unconnected with and independent of negligence on the part of the plaintiff, while on the other hand contributory negligence on the part of the plaintiff necessarily assumes negligence on the part of the defendant.

The instruction, as modified, made the due care of appellant dependent upon the contributory negligence of the deceased. The modification was misleading, and its vice was not cured by the general instructions copied above.

For the error in giving instruction marked 3D, the judgment will be reversed, and the cause remanded for a new trial.

McCULLOCH, C. J. (dissenting). Instruction numbered 3D, requested by the defendant, was a negative one, telling the jury in substance that if Barnett, the offbearer, was not negligent, but that the injury occurred by reason of the slab falling on the carriage and being drawn back against the saw by the act of plaintiff's intestate, then the plaintiff could not recover. The effect of it was to tell the jury that if Barnett was not negligent the plaintiff could not recover. The court erroneously modified it by inserting the words imputing negligence on the part of plaintiff's intestate, but this did not change the instruction so as to make the plaintiff's right to recover depend otherwise than on the negligence of Barnett. The court in two instructions specifically told the jury that the plaintiff could not recover unless the injury was caused by Barnett's negligence. The jury could not have been

misled. I am clearly of the opinion that the erroneous modification was not prejudicial to defendant, and that the judgment should be affirmed.