ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.* CRABTREE.

Opinion delivered March 9, 1901.

1. INSTRUCTION—SPECIFIC AND GENERAL.—It is error to refuse to give a specific instruction correctly and clearly applying the law to the facts of the case, even though the law is in a general way covered by the charge given, unless it appears that no prejudice resulted from the refusal. (Page 136.)

2. RAILROAD—HIGHWAY CROSSING—DUTY TO LOOK AND LISTEN.—In an action to recover damages caused by the failure of the engineer of a train to give the statutory signals at a highway crossing, there was evidence that defendant was approaching defendant's track and looking for a train expected from the south when a train approached suddenly from the north without warning, and that if plaintiff had looked to the north he would have seen the approaching train. The court instructed the jury that it was plaintiff's duty to "look out and listen for approaching trains," but refused to instruct that it was his duty to "look up and down the track" while approaching the crossing. *Held,* error. (Page 139.)

3. INSTRUCTION—WHEN REFUSAL ERRONEOUS.—A reversal must follow the refusal of a proper instruction, unless it appears that no injury resulted. (Page 139.)

4. RAILROAD SIGNALS AT HIGHWAY CROSSING.—The mere fact that a place on a railroad track eighty rods from a highway crossing is around the point of a hill does not show that a whistle sounded there could not have been heard at the crossing, nor justify a failure to give the statutory signals. (Page 139.)

Appeal from Crawford Circuit Court.

JEPHTHA H. EVANS, Judge.

STATEMENT BY THE COURT.

Plaintiff's team, frightened by a train, ran over him, and broke his arm. He sued for damages.

On the trial the presiding judge refused to give the following instructions asked by defendant: "(8) It is the duty of one approaching a railroad track to look up and down the track as long as he approaches. If the railroad was crooked, or through cuts and timber where the track cannot be seen for a great distance, it is incumbent on him to use the greater degree of caution, and to look as far as he can see; and, if from failure to do so he is injured, he cannot recover. (9) If the plaintiff saw, or by the exercise of reasonable care could have seen, the approaching train in time to have avoided injury to himself by the exercise of reasonable care, and did not do so, then he cannot recover." The court in his charge to the jury told the jury that plaintiff must himself exercise ordinary care. And further said on that point: "Now, then, the law requires, on the part of every party who is about to pass from one side of a railroad to another at a crossing, that he shall look and listen for approaching trains. His failure to do so would be negligence on his part, and if his failure to do so proximately causes injury, or contributes to his injury, he could not recover."

There was a verdict and judgment in favor of plaintiff for the sum of $1,350, and the railroad company appealed.

*L. F. Parker* and *B. R. Davidson,* for appellant.

The statutory requirement as to ringing the bell and sounding the whistle eighty rods from the crossing applies only to "grade" crossings, when there is a possibility of collision. Sand. & H. Dig. § 6196; 126 Ill. 416, 425; 114 Mass. 350; 110 Mass. 222; 56 Conn. 444. Ordinary care is all that a railroad company owes to one who is simply near its track. 135 Ill. 491; 32 Ill. App. 339; 47 Ill. App. 384; 10 Lea, 103; 29 Kans. 166. Appellee should have looked in *both* directions before attempting to cross the track. 36 Am. & Eng. R. Cas. 149; 45 *id.* 188; 45 N. W. 821; 27 Mo. App. 202; 24 N. Y. 430; 41 N. Y. 296; 45 N. Y. 660; 58 N. Y. 451; 41 Ia. 227; 38 Fed. 813; 72 Ill. 567; 11 S. W. 127. Appellee was guilty of contributory negligence in failing to look for the train. 54 Ark. 431-4; 56 Ark. 457-9; 61 Fed. 591; 62 Ark. 156; 32 Am. & Eng. R. Cas. 127; 23 *id.* 274; 20 S. W. 57; 95 U. S. 697-702; 114 U. S. 615; 102 Pa. St. 425; 49 Pa. St. 60; 11 Am. &

Eng. R. Cas. (N. S.), 90.; 19 Am. & Eng. R. Cas. 376; 10 *id.* (N. S.), 511-515; 11 *id.* 81; 41 Am. & Eng. R. Cas. 574; 35 *id.* 352; 75 N. Y. 273; 106 N. Y. 396; 77 Me. 85; 47 Mich. 401; 74 Wis. 514; 54 Fed. 301; 96 Mich. 327.

*Chew & Fitzhugh* and *C. B. Moore,* for appellee.

Section 6196, Sand. & H. Dig. applies to crossings above grade as well as on or below grade. 25 Barb. 199; S. C. 13 N. Y. 78. There being no exception or proviso in the statute as to crossings over trestles, etc., none can be made. 46 Ark. 302; 57 Ark. 614. Independent of any statute, due care required the ringing of the bell. 59 Pa. St. 265; 7 L. R. A. 316; 75 Ill. App. 592; 53 Ark. 201. Signals at crossing must be given, as well to protect persons on the highway from danger from frightened teams as to prevent actual collision. 113 Mass. 366; 28 L. R. A. 824; 17 L. R. A. 254; 113 Mass. 370. Failure to comply with the statute was negligence. 2 Wood, Railways, 1319; Bish. Non-Cont. Law, § 445; 39 S. W. 1112; 33 S. W. 146; 36 S. W. 793; 64 N. Y. 535; 23 Am. & Eng. R. Cas. 282.

RIDDICK, J., (after stating the facts). This is an action for damages alleged to have been caused by the failure of the engineer of a railroad train to give the statutory signals for crossings. The plaintiff, with a yoke of oxen and wagon, was approaching and about to cross defendant's railway at a public crossing when, as he states, the train approached suddenly and without warning, and frightened the oxen, and injured him. The evidence tends to show that plaintiff was on the lookout for trains, but he was expecting a train from the south, which was about due, when the train that caused the injury came from the north. The railway lay directly ahead of plaintiff as he approached, and it crossed the road on which he was traveling at right angles, upon a trestle ten or fifteen feet above the road. There was evidence showing that, had plaintiff looked to the north, he could have seen the train as it came through a cut in a hill some four hundred feet before it reached the trestle, and that from the cut to the trestle the train was in plain view of plaintiff, had he looked in that direction. Plaintiff stated that he was keeping a careful lookout, but did not see the train until the engine was on the trestle. Under this state of facts the presiding judge was asked by the defendant company to instruct the jury that it was the duty of the plaintiff "to look up and down the track" while approaching the crossing. He refused

to give this instruction, but told the jury that the law requires of one about to cross a railroad that he shall "look out and listen for approaching trains." The charge given by the learned judge contains a very clear and accurate statement of the law as far as it goes, though stated in rather general terms, but, as there seems no doubt from the evidence that plaintiff did look and listen for trains, while there is conflict in the evidence as to whether he looked for a train from the north, or kept any lookout in that direction, from which the train causing the injury came, we think instructions numbered eight and nine asked by defendant, and which are set out in the statement of facts, should have been given. It is true that plaintiff says he looked both ways, but, as he did not see the train until it reached the trestle, when, according to the evidence, he might by looking have seen it over four hundred feet before it reached that point, we think the question as to whether he exercised ordinary care in keeping a lookout in that direction should have been directly submitted to the jury. A lawyer would, of course, understand that the charge of the judge was intended to convey the idea that the traveler about to cross a railroad track must look for trains from both directions, and must continue on his guard until the danger is passed, but jurors are not usually learned in the law. They may have concluded in this case that plaintiff discharged the duty to look and listen by looking only in the direction from which he was expecting a train to come, or by looking and listening at only one time. We do not say that they did take this view of the law, but they might have done it under instructions which did not explicitly tell them that it was his duty to look in both directions, and to continue on his guard until the track was passed. When the circuit judge was asked to make the law clear to the jury on this point by telling them that one approaching a railroad track should "look up and down the track as long as he approaches," we think he should have done so. But counsel for plaintiff say that we should presume that the attorney for the company, in presenting the case to the jury, argued that the instruction that one about to cross a railway track "should look and listen for approaching trains" meant that he should look north as well as south. We are willing to indulge in this presumption, for we have no doubt that this argument as to the meaning of the instruction was made by the attorney for the defendant company. In other words, the trial judge having refused to explicitly instruct the jury on this point, the only resource left to the company was to

rely upon a statement of the law made to the jury by its attorney. But jurors are not required to take the law from counsel, and it was putting an undue burden upon the defendant company to compel it to rely upon convincing the jury as to the proper view of the law by an argument of its attorney. If the sympathies of the jury happened to be with the other side, that might be difficult to do, and might be too heavy a task even for the most gifted attorney. It is a burden that the law does not impose, for it is the duty of the judge to instruct, and each party has the right to have the jury instructed, upon the law of the case clearly and pointedly, so as to leave no ground for misapprehension or mistake. It is therefore error for the trial judge to refuse to give a specific instruction correctly and clearly applying the law to the facts of the case, even though the law is in a general way covered by the charge given, unless the court can see that no prejudice resulted from such refusal. *Muldowney* v. *Illinois Cent. R. Co.* 32 Iowa, 181; *Haines* v. *R. Co.* 41 Iowa, 227; *Manuel* v. *Chicago R. Co.,* 56 Iowa, 655; *Parkhill* v. *Brighton,* 61 Iowa, 103; *Gerdine* v. *State,* 64 Miss. 798; 11 Enc. Pl. & Pr. 298, 299.

Nor does the fact that the jury were men of intelligence change the rule. We know that men of high intelligence are often unlearned in the law, and have difficulty in applying it unless it is made plain to them by the judge. But if every member of the jury was as learned in the law as the judge himself, still they would not be judges of the law, and each party would still have the right to demand that the law be so stated to them that there would be no chance for them to evade or get around it. The charge should exclude questions of law, and leave only questions of fact for the jury.

Of course, there are cases when the refusal to give specific instructions may not be error, but it is often necessary to give them in order that there may be no question about the jury understanding the law. Suppose, for instance, a man approaching a railroad crossing in a wagon stops his team some distance away, and listens for trains, and looks carefully up and down the track, and then, having satisfied himself that the way is safe pulls his hat over his eyes to avoid the sunlight, or hoists his umbrella in front of him to keep off the rain, and allows his team to go without looking or listening again. If he is struck and injured by a train at the crossing, which he might have seen had be continued on his guard, it would not be sufficient on a trial for the injury for the judge to say

generally that it is the duty of one about to cross a railroad to look and listen for trains, but he should go farther and explain that this means that the traveler should continue on his guard and continue to use his eyes and ears until the track and danger is passed. If he should refuse to thus instruct when requested, it seems clear that it would in such a case be error, for it would be a refusal to state the law on the point upon which the case turned.

Now, this case turned, not on the question whether the plaintiff looked and listened for trains, for he did look and listen, but on whether he looked for and continued on his guard against trains from the north, or in the direction from which the train causing the injury came, and the trial judge should have explicitly told the jury the consequences of a failure to look for trains from that direction, and his refusal to do so when asked was error. As we cannot say that this error did not result to the injury of the defendant, it follows that, under former decisions of this court, we must assume that it was prejudicial; for the law does not require that it should affirmatively appear that injury resulted from such an error in order to reverse, but, on the contrary, when the question is properly brought up for review, a reversal must follow the refusal of a proper instruction, unless it affirmatively appears that no injury resulted. *Magness* v. *State,* 67 Ark. 594, 604.

On the other questions presented, we agree with the rulings of the trial judge. It may be true that a failure to sound the whistle at a place from which it could not have been heard by plaintiff was a matter of which he had no right to complain, but the mere fact that a place eighty rods from the crossing was around the point of a hill does not show that a whistle sounded there could not have been heard at the crossing, and did not justify the failure to give the signals required by the statute. While the evidence may be sufficient to sustain the verdict, which does not appear to be excessive, yet for the error in refusing instructions above noticed the judgment is reversed, and a new trial granted.

Wood, J., dissents.