# CHARLES RETTLIA v. FREDERICK Z. SALOMON, Appellant.

### Division Two, June 5, 1925.

1. **NEGLIGENCE: Operation of Automobile: Evidence of Skid Chains: Attendant Circumstances.** Although the lack of skid chains is not alleged as negligence upon which plaintiff seeks to recover damages for personal injuries received as a result of defendant's negligent operation of his automobile at a street crossing, evidence that no skid chains were used on the icy street, especially where defendant and his driver testify that the car skidded just before plaintiff was struck, is not error, where the instructions confine the jury to the negligence in operating the car charged in the petition. The measure of defendant's care depended upon the condition of the car and its equipment, and the condition of the street; and for the purpose of showing the care required of him, it is proper to show all the surrounding circumstances, and the condition and equipment of the car.

2. ———: ———: **Instruction: Absence of Skid Chains: Sole Cause of Injury.** Where the plaintiff, attempting to cross a street, was injured when defendant's automobile skidded, and sues for damages based on its negligent operation, and defendant and his chauffeur testify that there was snow on the ground and the street was slippery, and defendant testifies that the car, equipped as it was with non-skid tires, was as easily controlled as it would have been if equipped with skid chains, the court should refuse defendant's requested instruction that if plaintiff's injuries were "directly and solely caused by the fact that the defendant's automobile was not equipped with skid chains" their verdict must be for defendant. Clearly there was no evidence upon which to base such an instruction—there being no allegation that the lack of skid chains was the negligence relied upon.

3. **DEPOSITION: Part as Admission: Reading Whole.** Plaintiff may offer parts of defendant's previously-taken deposition, although he is present and testifies, as an admission; and in order to get before the jury the parts he considers an admission, he is not required to read the whole of it to the jury. He can read such part as he desires, and then defendant may read the whole of it if he wishes.

4. **EXCESSIVE VERDICT: Twelve Thousand Dollars.** As plaintiff was crossing a street defendant's automobile struck the iron post which

308 Mo. Sup.—43.

marked the safety zone, broke it off at the base and caused it to strike plaintiff and knock him down. He was taken to a hospital and first recovered consciousness five days later. There was a blood clot under the skin in the tissues over the right eye, and when the covering was stripped away a fracture but no depression of the bone was found. He was bleeding at the ears and nose, and there was a fracture at the base of the skull, and that fracture may have accounted for the bleeding at his ears. At the trial, eighteen months after the accident, his hearing was defective sixty or sixty-five per cent; his ears were inflamed and discharging pus; about one-third of the drum membrane was destroyed. His sight was affected and he saw only with difficulty; he found his way only by feeling with a cane. He had "terrifying spells with his head" which he could not understandingly explain. He had retired from business, and therefore his impaired earning capacity cannot be considered. His hospital, nurses' and physicians' expenses exceeded three thousand dollars. *Held*, that a verdict for twelve thousand dollars is not excessive.

Citations to Headnotes: Headnote 1: Motor Vehicles, 28 Cyc. p. 37. Headnote 2: Motor Vehicles, 28 Cyc. p. 49. Headnote 3: Depositions, 18 C. J. sec. 346. Headnote 4: Damages, 17 C. J. 408.

Appeal from St. Louis City Circuit Court.—*Hon. Victor Falkenhainer*, Judge.

Affirmed.

*Bryan, Williams & Cave* for appellant.

(1) The court erred in overruling the defendant's objection to the introduction of any evidence as to the failure of the defendant to have his car equipped with skid chains, for the reason that plaintiff having pleaded specific acts of negligence as causing his injuries, he is limited in his recovery to such specific acts, and any evidence as to other negligent acts on the part of defendant is inadmissible. State ex rel. v. Ellison, 270 Mo. 653; Degonia v. Ry. Co., 224 Mo. 564; Parker v. Drake, 220 S. W. 1000; Hollis v. L. & P. Co., 204 Mo. App. 297. (2) The court erred in refusing defendant's instruction directing the jury if they found that the accident

was caused solely by the absence of skid chains their verdict must be for the defendant. (a) That plaintiff, having bottomed his cause of action upon other specific acts of negligence, was not entitled to recover on this ground, and the defendant was entitled to have the jury so instructed. Cases supra. (b) The defendant is entitled to have the jury instructed that if the injury to the plaintiff was caused by any act other than the ones charged in plaintiff's petition the plaintiff is not entitled to recover. Bragg v. Street Railway Co., 192 Mo. 331, 352; Jones v. Rush, 156 Mo. 364; Outman v. Union News Co., 237 S. W. 800; Parker v. Sexton, 217 S. W. 616; B. & O. v. Lockwood, 72 Ohio St. 176; Price v. Railroad, 185 Mo. App. 436-439. (3) The court erred in permitting the plaintiff, over the objection of defendant, to read excerpts from the defendant's deposition without requiring plaintiff to read all of defendant's testimony on the same point and explanatory thereof. Littig v. Urbauer-Atwood Heating Co., 237 S. W. 785.

*Foristel, Mudd, Hezel & Habenicht* for respondent.

(1) There was no error in the court's rulings on the evidence with respect to the "skid chains" because: (a) No proper exceptions are shown to have been saved, for that the evidence came in without any timely objection. McCann v. U. R. Co., 249 S. W. 158; Salmons v. Railroad, 271 Mo. 395, 404; Re Drainage Dist., 266 Mo. 60, 71. (b) The evidence was not improper under the pleaded issues. 31 Cyc. 681, note 71; Idem, p. 682, note 81; Gilchrist v. Rys. Co., 254 S. W. (Mo.) 163; Hogan v. Fleming, 265 S. W. 879. (c) The evidence was in any event not hurtful to the defendant so as to constitute reversible error. Kibble v. Railroad Co., 227 S. W. (Mo.) 45. (2) The court did not err in refusing defendant's Instruction B because (a) the instruction was unsupported by evidence. Kane v. Railroad, 251 Mo. 13, 25; Packer v. Ry. Co., 265 S. W. 123. (b) The case was fully covered by the instructions given.

(3)   The court did not err in allowing plaintiff's counsel to read in evidence as an admission against interest parts of the defendant's deposition taken in the case. 4 Ency. Ev. p. 839 (e) ; Kritzer v. Smith, 21 Mo. 296; Bogie v. Nolan, 96 Mo. 85; Roark v. Amusement Co., 209 Mo. App. 638; Raphael v. Hartman, 87 Ill. App. 637; Siber v. Hostick, 91 Neb. 255; Dispatch Line v. Glenny, 41 Ohio, St. 166; Morrison v. Life Ins. Co., 59 Wis. 162; Davis v. Mason, 4 Pick. 158; Watson v. Railway Co., 76 Minn. 363; Heimon v. Lamb, 117 Ill. 556; Whitlack v. Fid. & Cas. Co., 47 N. Y. Supp. 331.

WHITE, J.—The appeal is from a judgment recovered by plaintiff in the Circuit Court of the City of St. Louis against the defendant for personal injuries alleged to have been caused by his negligence.

January 14, 1921, the plaintiff, walking north on the east side of Spring Avenue, in the city of St. Louis, approached and started to cross Lindell Boulevard, which runs east and west. At that time the defendant, in an automobile, was driving from the west on the south side of Lindell Boulevard. Plaintiff testified that defendant was at a distance of 250 feet when plaintiff started across Lindell Boulevard. There was a safety zone in Lindell Boulevard, thirty or thirty-five feet from the south curb. It was marked by a cast-iron post with a base around it three or three and a half feet long, and eighteen or twenty inches wide. The post was about eight feet high. The plaintiff testified that he arrived at the post and then turned to look for another man who had started across with him, when the defendant's car struck the post and broke it off at the base, causing it to hit plaintiff and knock him down, so that he knew no more until he recovered consciousness in a hospital. A policeman arrived at the scene after plaintiff was taken away, found the defendant's automobile against the post which was broken off at the base.

The defendant testified that the plaintiff was between the curb and the safety zone, with room enough

for him to pass between the plaintiff and the curb when the plaintiffs uncertain movements caused defendant's chauffeur to swerve across so that the car struck the plaintiff, then skidded and struck the post.

The defendant's chauffeur, Fred Meyer, testified that the plaintiff and another man were between the curb and the safety zone as he drove up; that he thought the plaintiff would go ahead of him, but he commenced walking in front of the car at a pretty fair gait, and witness swung his steering wheel around to go north in Spring Avenue; his car missed the post at the front, and skidded into it at the rear. He did not see the machine nor the post strike the plaintiff. He said the front of his car had passed the plaintiff so that he could not see him. When he and Mr. Salomon got out they found the plain- tiff lying east and south of the post. They picked him up and took him to the hospital. Other evidence was in- troduced tending to explain the situation.

The acts of negligence alleged in plaintiff's petition related to the operation of defendant's automobile. There was a verdict and judgment for the plaintiff for $12,000, and the defendant appealed.

I. Appellant first assigns error to the action of the trial court in overruling his objection to evidence intro-

Skid
Chains.
duced by the plaintiff to show that defendant's car was not equipped with skid chains, because the lack of skid chains was not alleged in the petition as negligence upon which the plaintiff sought to recover.

The evidence in relation to skid chains first ap- peared in a portion of a deposition of the defendant offered by plaintiff, as follows:

"Q. Did you have skid chains on? A. No, sir; brand-new tires on, though.

"Q. What kind of tires did you have? A. Fire- stone anti-skid in the rear and rib tread in the front, brand new.

"Q. Did you have skid chains for that car? A. No sir.

"Q.   What was the condition of those tires on that day; that is, on the 14th day of January, 1921, in respect to the non-skid projections on the tires?   A.   They were in perfect condition.

"Q.   Well, now, based on your knowledge and experience in driving cars for several years, of approximately the same weight and size as this Haynes car, on a street slightly upgrade, what degree of protection do non-skid tires afford as compared with skid chains? A.   Just about the same."

The defendant was called as a witness in his own behalf and during his cross-examination by the plaintiff the following occurred:

"Q.   Were there any skid chains on this car?   A. No. sir.

"Q.   Driving a car on an icy street without skid chains?   A.   Yes, sir.

"JUDGE CAVE:   If your Honor please, I object to that.   There is no allegation on that.

"THE COURT:   Objection overruled.

"To which action of the court defendant by his counsel then and there excepted.

"Q.   There were no skid chains on it?   A.   No sir.

"Q.   Did you have skid chains with this car?   A. No sir.

"Q.   What was the condition of this street? A.   Icy.

"Q.   You were driving down town this morning in this limousine?   A.   Ice, covered with snow.

"Q.   Covered with snow?   Anybody else in the machine besides you and your chauffeur?   A.   No one else."

From this it appears that the deposition was read, without objection.   Then, on cross-examination, when the defendant was asked about skid chains there was no objection until after he had answered the question, nor until another question was asked connecting the absence of skid chains with the icy condition of the street. Then the defendant objected because "there is no allegation on that."   That is, there was no allegation of negligence in driving on the slippery street without

chains.   There was no objection to the evidence as to skid chains, because the question was repeated and answered without objection.   The defendant himself introduced evidence to show that there was snow on the street and it was in a slippery condition, and that caused the question to be put in the form to which the defendant objected.   It was the form of the question and not the substance of it that the defendant objected to.

The measure of the defendant's care depended upon the condition of the car and its equipment, and the condition of the street.   For the purpose of showing the care required of him, it was proper to show all the surrounding circumstances and the condition and equipment of the car.   If the car was equipped with skid chains, under some circumstances it might require less care in approaching the street crossing or a pedestrian than it would require if the skid chains were absent.   Not only was no negligence alleged regarding the absence of skid chains, but the jury was instructed that they could "find for the plaintiff only in the event that you find and believe from the preponderance—that is the greater weight—of the credible testimony that the defendant was guilty of negligence in one or more of the particulars set out in the other instructions herewith given you. . . . You must further find and believe from the evidence that such act or acts of negligence, if any, on the part of the defendant directly contributed to cause said injuries, if any."

The alleged negligent acts submitted to the jury, which they must find before a verdict was authorized, were driving an automobile at a dangerous rate of speed, the failure to slow down or to give a warning sound; a failure to stop or slow down so as to prevent a collision with the plaintiff or the post.   These acts of negligence are expressed in different forms and in detailed length in the instructions, but they are sufficiently clear to inform the jury that the negligence relied upon was confined to the operation of the car, and did not include any defect in its equipment.

The evidence was properly admitted.

II.  The defendant asked an instruction, marked "B," as follows:

"B.  The court instructs the jury that if you find and believe that the injuries, if any, to plaintiff were Sole directly and solely caused by the fact that the Cause. defendant's automobile was not equipped with skid chains, then your verdict must be for the defendant."

In his testimony at the trial the defendant and his chauffeur stated there was snow on the ground, the street was slippery, and the car skidded against the post.  But nowhere does either the defendant or his chauffeur say a word which conflicts with those statements in his deposition to the effect that his car was just as easily controlled, equipped as it was with non-skid tires, as it would have been with skid chains.  This refused instruction is not predicated upon the absence of skid chains as *contributing* to the result, but the jury was asked to return a verdict for the defendant if the absence of skid chains was the *sole cause* of the injury. There is not a particle of evidence upon which to base that instruction.

III.  When the plaintiff offered part of the deposition of the defendant taken in the case the defendant Deposition. objected and assigns error to the ruling of the court in admitting it.  The objection came in this way:

"JUDGE CAVE: 'If your Honor please, I object to offering any part of it if he doesn't offer all.'

"The objection was overruled, counsel for defendant stating: 'We object for the reason that a reading of a portion of it, without reading the balance, is prejudicial to the defendant.

"COUNSEL FOR PLAINTIFF: 'I have no objection to Judge Cave reading the deposition thereafter if he desires to.'"

The part of the deposition offered and read was offered as an admission on the part of the defendant.  The

appellant cites Littig v. Urbauer-Atwood Heating Co., 292 Mo. 226, in support of its position. In that case parts of statements of the witness, over objection, were read to the jury for the purpose of impeachment. The court had this to say about such statement (l. c. 247):

"Where a written statement or deposition signed by the witness is offered in evidence, counsel have no legal right to read to a witness on the stand, detached por - tions of said statement or deposition, for the purpose of impeaching him, but the statement or deposition should be shown to the witness, and if his signature thereto is ad- mitted to be genuine, the whole statement or deposition, *as far as it is competent,* must be offered in evidence, and speaks for itself. If a part of the instrument does not bear upon the question under consideration, then the im- peaching party must read to the jury, *all that the instru- ment contains in reference to the impeaching matter,* and opposing counsel *may then read the remainder* of the statement, if any, that is relevant and competent." (Italics ours).

The offer in this case was accompanied by the very condition which in that case would have made the evi- dence competent. The plaintiff offered a part of the deposition, presumably all that he deemed relevant and competent, and suggested that he had no objection to counsel for defendant reading the remainder.

Respondent points out also a distinction between statements offered to impeach a witness, and statements of a party offered as an admission. Suppose the plain - tiff had desired to offer oral evidence of some statement that defendant had made. He certainly would not be required to offer anything that occurred in the conver- sation except that which could be construed as an admis- sion. If the conversation included any explanatory statement, made by the party whose admission is offered, the opposing party could offer it. It is not contended here that the remainder of the deposition threw any addi- tional light upon that part offered. If it did, it was open

to the appellant to offer it.    [22 C. J. pp. 411-412; 40 Cyc. 2747.]

IV.    Appellant further claims that the verdict for $12,000 was excessive.    It was five days after the accident before plaintiff recovered consciousness, and he was in the hospital six weeks.    He had a large hematoma; that is, a blood clot under the skin, in the tissues over his right eye, and when Dr. Brand, in performing an operation upon plaintiff's head, stripped off the covering, he found a fracture but no depression of the bone.    Plaintiff was bleeding at the ears and nose.    Physicians further found evidence of a fracture at the base of the skull.    This, though no x-ray pictures were taken, is said to account for the bleeding at the ears.    At the time of the trial, a year and a half after the accident, his hearing was defective sixty or sixty-five per cent.    There was expert evidence that it might improve "a whole lot."    His ears were inflamed and discharging pus.    About one-third of the drum membrane was destroyed.    The plaintiff's sight was affected, so that he could see with difficulty.    Before the accident he had consulted physicians about a cataract in one eye, but it was not necessary for him to wear glasses until after the injury. He walked to and from his daughter's residence, a distance from his home which required more than an hour.    He and his daughter explained that he found his way by feeling with his cane, although his sight was quite defective.    He testified that he had peculiar spells with his head, which he found it very difficult to explain so as to be understood.    He appeared to have terrifying spells.    He had retired from business, therefore his impairment of earning capacity would not count in his injuries.    The jury was authorized to take into consideration permanent injuries in determining his damages.    Appellants make no objection to that instruction and the evidence appears to authorize a finding of permanent impairment of faculties and functions. The testimony showed that plaintiff's hospital and nurse

<!-- margin note: Excessive Verdict. -->

bill were $410; three or four doctors attended him. His doctor bills amounted to between $2300 and $2400, besides that of Dr. Waldo Briggs, as to which there is no evidence.

Plaintiff's petition places his expenses for doctors' bills at $2500, and the evidence indicates that it was that much. Thus we have the actual expense of the plaintiff at nearly three thousand dollars. Under the circumstances we think the verdict was not excessive.

The judgment, accordingly, is affirmed. All concur.