Eva M. Wright, Administratrix, Respondent, v. Missouri Pacific Railroad Company, Appellant.*

In the Springfield Court of Appeals. Opinion filed July 17, 1926.

**1.—Railroads—Action for Death—Arkansas Lookout Statute.** Under Arkansas law, Crawford & Moses' Dig. Ark., secs. 8562, 8575, administratrix suing railroad, under Kirby's Dig. Ark., secs. 6289, 6290, for killing of intestate at crossing in that State, may recover for breach of lookout statute (Crawford & Moses' Dig., sec. 8568), though intestate was contributorily negligent.

**2.—Trial—Demurrer.** Evidence most favorable to plaintiff must be invoked against demurrer.

**3.—Railroads—Action for Death—Arkansas Lookout Statute.** Breach of Arkansas lookout statute (Crawford & Moses' Dig., sec. 8568), held for jury in action for death of truck driver at crossing.

**4.—Same—Same—Same—Instruction Held not Broader Than Statute.** Instruction that trainmen must keep constant lookout for persons and property "on or near" track held not erroneous as broader than Arkansas lookout statute (Crawford & Moses' Dig., sec. 8568), requiring lookout for persons and property "upon" track.

**5.—Same—Same—Instruction Held Properly Refused.** Instruction that enginemen's duty to take steps to prevent injury does not begin until it is discovered that driver approaching crossing is likely to be placed in position of peril held properly refused, in action tried under Arkansas law.

**6.—Evidence—Cross-examination as to Testimony at Former Trial Held Proper.** Cross-examination of witness as to whether he testified on former trial as counsel read from transcript of evidence, not signed by witness nor so authenticated as to be admissible, held proper.

**7.—Appeal and Error—Appellate Practice.** Cross-examination of defendant's witness as to whether he testified on former trial as plaintiff's counsel

read from transcript of evidence **held** harmless to defendant, where such evidence was not materially different from his testimony in second trial.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 968, n. 36; Railroads, 33Cyc, p. 978, n. 71, New; p. 991, n. 34; p. 1104, n. 32; p. 1137, n. 22; Trial, 38Cyc, p. 1543, n. 67; Witnesses, 40Cyc, p. 2714, n. 93.

Appeal from the Circuit Court of Butler County.—Hon. Chas. L. Ferguson, Judge.

AFFIRMED.

*James F. Green* and *J. C. Sheppard* for appellant.

(1) The court erred in permitting counsel for respondent to single out one isolated statement on cross-examination of J. O. Madison, fireman, on the train, when the whole of his testimony on the former trial had been reduced to writing, and was present in court and could have been read to the jury. This was the same as though his deposition had been taken, and the question asked was one of the crucial points in the case as to when he discovered the peril of F. D. Wright in the automobile. Littig v. Urbauer-Atwood Heating Co., 292 Mo. 226, 247, 237 S. W. 779; Slaughter v. Sweet & Piper Horse & Mule Co., 259 S. W. 131, 135. (2) The court erred in giving to the jury respondent's instruction No. 1 for the reason that it is broader than the Arkansas Lookout Statute, which requires the trainmen to keep a lookout for persons or property on the track. This instruction told the jury that, "The law required the employees in charge of defendant's trains to keep some one constantly upon the lookout for persons or property on or near the track, and failure to do so, if there was such failure, was negligence." Sec. 8568 C. & M. Digest, Statute of Arkansas. See copy of this section in plaintiff's petition. (3) The court erred in refusing to give to the jury instruction No. "8A" offered on behalf of appellant. Blytheville L. & A. S. Ry. Co. v. Gessell, 250 S. W. 881. (4) The court erred in giving to the jury respondent's instruction No. 1, and in refusing to give appellant's instruction No. 6A concerning the Arkansas Lookout Statute, for the reason that the evidence showed conclusively that a constant lookout was kept, and, therefore, there was nothing to base this instruction on. Gunn v. Hemphill Lbr. Co., 218 S. W. 978; Parker v. Drake, 220 S. W. 1000; McElvain v. Dorrah, 204 S. W. 824; Baker v. J. W. McMurray Const. Co., 221 S. W. 1070; Ostopshook v. Cohen Swartz R. & S. Co., 227 S. W. 642. (5) The court erred in refusing to give to the jury appellant's instruction No. 1A at the close of the plaintiff's case, and No. 2A at the close of the whole case in the nature of demurrers to the evidence, for

the reason that the facts clearly showed that the negligence of F. D. Wright, the driver of the automobile, was of greater degree than the negligence of the agents and servants of the railroad company as a matter of law.

*W. A. Welker, Wils Davis* and *J. T. Coston* for respondent.

We will undertake to show: (1) That most of the evidence bearing on the question of negligence and contributory negligence was given by witnesses who testified with reference to a plat which the witnesses used to point out locations, distances, etc., all of which was plain, intelligible and forceful before the jury, but in the very nature of things such evidence, consisting of physical demonstrations and movements of the witnesses, cannot be brought before this court, and is not before this court for consideration. Therefore, the evidence is not all in the record, and this court will indulge the presumption that the evidence sustains the verdict. This proposition of law is well settled. Benton v. State, 30 Ark. 349; Fitzgerald v. LaPorte, 67 Ark. 265; Larson v. Railroad, 21 N. W. 836; Mining Company v. Stephenson, 30 Pac. 1098; Taylor v. Spears, 8 Ark. 436; Carroll v. Peake, 1 Peters 23; Garrity v. Hamburger Co., 28 N. E. 747; City of Covington v. Railroad, 20 S. W. 539; Casteel v. Casteel, 38 Ark. 481; Carpenter v. Ellenbrook, 58 Ark. 135; Hershey v. Berman, 34 Ark. 313; Third Century Digest, sec. 3911, col. 680. (2) That the lookout statute of Arkansas, as construed by the Supreme Court of Arkansas in numerous decisions, required the trainmen to keep a constant lookout for persons and property near the track as well as on it. C. & M. Digest, sec. 8568; St. L. S. W. Ry. Co. v. Bowen, 73 Ark. 594, 84 S. W. 789; Railway Co v. Lewis, 60 Ark. 416; Railroad Co. v. Denty, 63 Ark. 185; Railroad Co. v. Russell, 64 Ark. 239; Bush v. Brewer, 136 Ark. 256. (3) That instruction No. 1, dealing with the lookout statute, is in legal effect and meaning precisely like numerous instructions approved by the Supreme Court of Arkansas, and at least one instruction approved by the Supreme Court of Missouri. Hiatt v. Frisco Road, 271 S. W. 806; Huff v. Mo. Pac. R. R. Co., 25 Ark. 94; Mo. Pac. R. R. Co. v. Mitchell, 25 Ark. 129. (4) That the learned trial judge committed no error in declining to give defendant's request No. 8A, for the reason that it was argumentative. Olsen v. Bank, 158 Ark. 643, 239 S. W. 16; Y. & M. V. R. R. Co. v. Hill, 141 Ark. 378, 216 S. W. 1058. (5) That while said request 8A (if not argumentative) would have been good as an instruction on discovered peril under the common law, it was bad in this case because it ignored the lookout statute of Arkansas, which required the defendant to keep a *constant* lookout for persons and property on or near the track. Davis v. Scott, 151 Ark. 34, 235 S. W. 410; Mo. Pac.

R. R. Co. v. Bode, 168 Ark. 160-161-162; Mo. Pac. R. R. Co. v. Bain, 25 Ark. 3; Hiatt v. St. L. S. F. Ry. Co., 271 S. W. 806. (6) That the method used by counsel for plaintiff to impeach the fireman was the method approved by the Supreme Court of Missouri in the case cited by learned counsel. After we asked the witness if he did not make certain statements in his former testimony, and he answered that he did, learned counsel had the right to ask the witness if he did not make other statements concerning the same matter. Failing to avail himself of that right he is in no position to complain if he suffered by not doing it. That is the practice approved by the Supreme Court of Missouri in the very case cited by learned counsel. Slaughter v. Horse & Mule Co., 259 S. W. 135. (7) That some of the witnesses testified that the whistle was not sounded and the bell did not ring, while still others testified that they did not hear it. This was sufficient, under the law of Arkansas, to submit the question of giving signals, to the jury. Frisco Railroad v. Horn, 168 Ark. 194.

BRADLEY, J.—This is an action for damages for the death of plaintiff's husband killed at a crossing at Smithdale, Cross county, Arkansas, on March 22, 1923. The cause was filed in Butler county in this State, October 6, 1924, and was tried before the court and a jury, resulting in a verdict for $7500 in favor of plaintiff. Motion for a new trial was overruled and defendant appealed.

The cause accrued in the State of Arkansas and was tried and disposed of below under the applicable Arkansas law which was pleaded and in evidence.

After some preliminary allegations plaintiff pleaded the following sections of the Arkansas statutory law:

Section 6289, Kirby's 1904 Digest. "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which, should have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony."

[Section 6290, Kirby's 1904 Digest.] "Every such action shall be brought by, and in the name of, the personal representative of such deceased person, and if there be no personal representative, then the same may be brought by the heirs at law of such deceased person; and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin, in the proportion

provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action, the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person. Provided every such action shall be commenced within two years after the death of such person.''

[Section 8562, Crawford & Moses' Digest.]   ''All railroads which are now or may be hereafter built and operated in whole or in part in this State shall be responsible for all damages to persons and property done or caused by the running of trains in this State.''

[Section 8575, Crawford & Moses' Digest.]   ''In all suits against railroads for personal injury or death, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of the recovery shall be diminished in proportion to such contributory negligence.''

[Section 8559, Crawford & Moses' Digest.]   ''A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the said road shall cross any other road or street, and be kept ringing or whistling until it shall have crossed said road or street, under a penalty of two hundred dollars for every neglect, to be paid by the corporation owning the railroad, one-half thereof to go to the informer and the other half to the county; and the corporation shall also be liable for all damages which shall be sustained by any person by reason of such neglect.''

[Section 8568, Crawford & Moses' Digest.]   ''It shall be the duty of all persons running trains in this State upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall de-

volve upon such railroad to establish the fact that this duty to keep such lookout has been performed.''

The petition, after setting out the Arkansas statutory law as above, charged upon the last chance doctrine as we read, and upon a breach of or failure to observe the duty imposed by sections 8559 and 8568, supra. Section 8559 is the Arkansas statutory signal section and section 8568 is what is denominated as the lookout statute. Defendant answers by a general denial and a plea of contributory negligence.

Defendant's railroad at Smithdale where the collision occurred runs east and west. For quite a distance east of Smithdale the public highway parallels the railroad and lies immediately south thereof, but at Smithdale it turns north and crosses the railroad. The railroad track approaching the Smithdale crossing from the east is on a dump twelve or fifteen feet higher than the highway. It is between sixty-five and seventy feet from the railroad track south to the point where the highway turns north towards the crossing. The surrounding country is level and the highway is up grade from the turn to the railroad track. This grade rose twelve or fifteen feet in the sixty-five or seventy feet from the turn to the crossing. March 22, 1923, about 3 o'clock p. m., a clear day, defendant's through passenger train running between Memphis and Little Rock approached the Smithdale crossing from the east traveling about forty-five miles per hour. At the same time, the deceased, F. D. Wright, approached this crossing from the east in a Ford laundry truck traveling as estimated fifteen or twenty miles per hour. The truck was so boxed that the driver could not see to the rear, but could see out at the sides. With the deceased at the time was a negro boy sitting on the same seat and to his right. There were no obstructions to hinder the view of the trainmen or the deceased, but deceased could not have seen the approaching train before he turned north, or afterwards, without leaning forward and looking out the truck window on the right and around the negro boy. Without looking to the east deceased drove upon this crossing and was struck and killed. The negro boy saw the train in time to jump to safety.

The fireman saw the truck when it was about a quarter of a mile from the crossing, and noticed it, at least at intervals, from the time he first saw it until the collision, but says that he did not realize that it was going into the danger zone until it was within fifteen or twenty feet of the crossing. The engineer was on the right hand side of the engine cab and the boiler obstructed his view of the truck while it was traveling west parallel with the railroad, and the fireman did not mention the truck to the engineer until after it made the turn and had approached to within fifteen or twenty feet of the track. At this time the fireman says that he then realized that the

driver of the truck was not going to stop and he shouted to the engineer to stop and that the engineer "almost in a second" shut off the steam and put the brakes on.

The issue made on the giving or not giving the statutory signals was sharply drawn and defendant offered evidence tending to show that these required signals were given. But on the other hand plaintiff offered substantial evidence that these signals were not given. Learned counsel for defendant do not, we think, seriously contend that there was no substantial evidence tending to show that these signals were not given, hence we shall not set out the evidence on this issue. Such additional facts as may be necessary we shall state in the course of the opinion.

The court gave three instructions for plaintiff which instructions are as follows:

No. I. "The 'court instructs the jury that the law required the employees in charge of defendant's trains to keep some one constantly upon the lookout for persons and property on or near the track, and failure to do so, if there was such failure, was negligence. Therefore, if you find that the employees in charge of defendant's train could, by keeping such constant lookout, have discovered the peril of deceased in time to have prevented the injury, by the exercise of reasonable, ordinary care after discovering his peril, and if they failed to exercise such care and keep such constant lookout for persons and property on or near the track, the defendant was guilty of negligence; and if such negligence caused or contributed directly to the injury of the deceased, your verdict will be in favor of the plaintiff, unless you further find from the preponderance of the evidence that the deceased himself was guilty of contributory negligence equal to or greater in degree than the negligence of the defendant."

No. 2. "You are instructed that as a matter of law the burden is on the defendant railroad company to show by preponderance of the evidence that a constant lookout was kept."

No. 3. "If you find from a preponderance of the evidence that the employees in charge of defendant's train at the time of the accident, failed to commence ringing the bell or sounding the whistle a distance of eighty rods from the crossing and failed to continue to ring the bell or sound the whistle until the crossing was reached, the defendant was guilty of negligence, and if such negligence caused or contributed to the injury, your verdict will be for the plaintiff, unless you find from a preponderance of the evidence that the deceased was guilty of contributory negligence equal to or greater in degree than the negligence of the defendant."

Error is assigned (1) on the refusal of a peremptory direction at the close of the whole case; (2) on the instructions given and re-

fused; and (3) on the manner of cross-examination of defendant's witness J. O. Madison.

What is generally denominated as the comparative negligence rule obtains in the state of Arkansas so far as concerns suits for personal injury or death caused by the running of railroad trains. Such is the rule established by section 8575, Crawford & Moses' Digest, supra. The demurrer is bottomed upon the contention that the contributory negligence of the deceased was equal to or greater than the negligence of the defendant; that the record so shows and that the court should have, as a matter of law, so declared. Section 8562, Crawford & Moses' Digest, supra, provides that all railroads built and operated in whole or in part in the State of Arkansas shall be responsible for all damages to persons and property done or caused by the running of trains in the State. Under the construction given this statute by the Supreme Court of the State of Arkansas, its highest judicial tribunal, when it is shown that an injury to either person or property has been caused by a moving train a statutory presumption arises that such injury was the result of the negligence of the railroad company. The statute itself does not in terms create the presumption mentioned, but, it is ruled, such presumption inheres therein. [Kansas City Southern v. Davis, 83 Ark. 220, 103 S. W. 603; Barringer v. Railroad, 73 Ark. 548, 85 S. W. 94; 87 S. W. 814; St. L., I. M. & S. Ry. Co. v. Standifer, 81 Ark. 275, 99 S. W. 81; Nelson v. Mo. Pac., 160 Ark. 568, 255 S. W. 10; Missouri Pacific Railroad Co. v. Bain, 280 S. W. (Ark.) 625.]

In Kansas City Southern v. Davis, supra, this instruction was challenged: "The court instructs the jury that if they find, from a preponderance of the evidence, that the plaintiff was injured, and that such injuries were caused by a running train of the defendant, then you are instructed that this is a prima-facie proof of negligence on the part of said company."

It was contended that the presumption of a prima-facie case as was declared by the instruction to exist only obtained, and that such an instruction was proper only, when the negligence relied upon was the failure to obey the lookout statute. This contention was ruled to be unsound and the instruction was approved. The Supreme Court of Arkansas has uniformly ruled that the presumption mentioned inheres within the statute as stated. Also our Supreme Court in a crossing case accruing in the State of Arkansas considered and discussed this presumption and announced the construction given by the Arkansas Supreme Court to section 8562, supra. [See Hiatt v. Railroad, 308 Mo. 77, 271 S. W. 806.] Our Supreme Court in the case mentioned ruled that according to the construction given by the Arkansas Supreme Court this prima-facie case made by showing in-

jury from a moving train could only be overcome by a showing on the part of the railroad company that it was not at fault.

Huff v. Railroad, 280 S. W. 648, is a very recent Arkansas crossing case. There the negligence charged was a breach of the lookout statute and the last-chance doctrine. There a highway ran parallel with the railroad track and Huff was traveling north in a gravel truck along the highway. The gravel cars were on the opposite side of the railroad from the highway and the gravel trucks had to cross the railroad to get to these cars. Huff's truck was struck and damaged by a northbound passenger train as he was crossing over to get to the gravel car. Huff testified that when he came to the turn where the highway crossed the railroad he looked up the track north, but did not look south; that he heard no signals by bell or whistle; that there was a slight depression between the highway and the railroad and that as he turned up from this depression to go upon the track he discovered the train and seeing that his truck would be hit he jumped and escaped injury. Other witnesses corroborated Huff's statement that no signal was given. The railroad track was straight for a long distance to the south and there were no obstructions. Huff could have seen the train if he had looked towards the south and the engineer and fireman could have seen Huff driving his truck if they had been looking. So it appears in the reported case.

Under the negligence charged and under the facts as stated the trial court in the Huff case directed a verdict for defendant. But on appeal the Supreme Court of Arkansas held that the cause should have gone to the jury.

The Huff case on the question of negligence of the driver of the truck is substantially on all fours with the cause at bar. The two cases differ only on the charges of negligence against the railroad company relied upon for recovery. But notwithstanding this difference the Huff case is an authority supporting plaintiff's contention that she was entitled to go to the jury on the charge of negligence based upon the alleged breach of the lookout statute.

In the Huff case the Supreme Court of Arkansas speaking through Chief Justice McCULLOCH said: "But it is contended by counsel for appellee that according to the undisputed evidence appellant was guilty of contributory negligence in attempting to drive upon the track without looking up and down the track for the approach of a train, and that this act of contributory negligence bars recovery for damage to property under the lookout statute, supra. We think that counsel are correct in the contention that the undisputed evidence establishes negligence on the part of appellant in failing to look for approaching trains before attempting to cross the track. The injury occurred in broad daylight, the track was straight and there were no obstructions, and appellant could have seen the ap-

proaching train if he had looked towards the south. He was travelling northward and could see up the track without effort, and it was his duty to look towards the south to see whether a train approached from that direction. It was his duty, in order to make his precautions effective, to look up and down the track (St. Louis-San-Francisco Ry. Co. v. Crabtree, 62 S. W. 64, 69 Ark. 134), and there was nothing in the circumstances or surroundings to relieve appellant from the duty of looking to the south as well as to the north; hence he was guilty of negligence in failing to look. Such negligence does not, however, bar recovery under the lookout statute, and counsel for appellee are mistaken in their contention that it does so."

But for defendant at bar it is argued that the evidence conclusively shows that the fireman saw deceased and testified that he saw him and there being nothing to the contrary it is conclusively established that the lookout statute was not breached. In ruling this contention we recur to the record. The fireman testified that he observed deceased as he was traveling along the highway going west and approaching the point where the highway turned north towards the crossing; that he saw deceased making the turn and that he "slowed up on the curve," and that he thought he, the deceased, would stop "as soon as he made the turn." The turn is sixty-five or seventy feet from the railroad track, and the fireman did not again see the truck from the time it was on the turn until it was within fifteen or twenty feet of the railroad track. Invoking the most favorable evidence against the demurrer, as the rule requires, the truck traveled the difference between seventy feet and fifteen feet or a distance of fifty-five feet unobserved by the fireman. The engineer as stated claimed that he could not see the truck because the boiler obstructed his view, and we shall not attempt a discussion in an endeavor to demonstrate that he too might have seen the approaching truck before it reached a point within fifteen feet of the railroad track if the lookout had been *constant* as by the statute required. Undoubtedly the interval lapsing while deceased unobserved by the fireman drove fifty-five feet at the rate of fifteen miles per hour, favorably stated, would make a question of fact for the jury on whether or not the fireman kept a *constant* lookout. In addition to the above facts which tend to support plaintiff's contention that she was entitled to go to the jury on the issue of a breach of the lookout statute, there was evidence that the brakes were not applied and that the speed of the train was not in the least slackened until after the collision. Such evidence of course suggests the inference that the truck driven by deceased was not seen in the danger zone at all until actually struck, or so shortly prior that there was no time to act before the collision.

Missouri Pac. R. Co. v. Bode, 168 Ark. 160, 269 S. W. 361, is a recent Arkansas crossing case wherein it appears that the driver of

the automobile, F. C. Bode, was killed. The suit was by the administrator. The collision occurred at a street crossing in O'Kean in Randolph county, Arkansas. The deceased was crossing the railroad track from east to west and the train was coming from the north. The cause went to the jury on the alleged failure to give the statutory signals and on the issue of whether the negligence of deceased was equal to or greater in degree than the negligence of the railroad company. In that case as in our case there was conflict in the evidence about the statutory signals being given.

The facts as appear in the reported case are about these. Bode was a merchant and farmer and resided in O'Kean. His store fronted the railroad. His residence was a block away. About 3:30 p. m. on the day of the collision Bode got in his car at his residence and drove northwesterly to a street which crossed the railroad at right angles, and when he reached that street he turned west, drove upon the track and was struck by a southbound passenger train. There was a side track about forty feet east of the main track. He was seen by numerous witnesses and they all testified that when he crossed the side track going in the direction of the main track he appeared to be unaware of the approaching train and had his head turned towards the south. The view to the north was unobstructed and he could have seen the approaching train if he had looked in that direction. Just before he drove upon the main track he turned his head to the north and apparently saw the train, but it was then too late.

In ruling the assignment in the Bode case that the evidence was not sufficient to support the verdict the court said: "It is argued, too, that it ought to be said in this case that the undisputed evidence shows that the negligence of the deceased was as a matter of law, at least equal to that of the servants of appellant in charge of the train, and that for that reason there can be no recovery, but we cannot agree with counsel in this contention. The collision occurred in the light of day, and the track and right of way were free of obstructions. Either party, deceased or the trainmen, could have discovered the danger and might have avoided it by the exercise of proper care. Deceased should have looked to the north, and was guilty of negligence in not doing so. On the other hand, the men operating the engine should have given the statutory signals until the crossing was passed, and if they had done so the collision might have been averted. Nearly all of the witnesses testified that deceased appeared to be intently looking towards the south, as if he expected danger in that direction, and the jury could have found that he did not hear the whistle of the engine coming from the north. This did not excuse the deceased from looking towards the north, but it was worthy of consideration as showing that deceased was making an honest, if misguided effort, to avoid danger, in determining the de-

gree of his negligence as compared with that of the men operating the engine in failing to give the statutory signal. At any rate, we are unable to say that the negligence of the deceased was, as a matter of law, equal to or greater than that of the men in charge of the engine, and we think that it was a question to be properly submitted to the jury under the circumstances of the present case.''

We might in concluding the assignment based upon the demurrer again revert briefly to the Hiatt case, supra, decided by the Supreme Court of this State. There the Arkansas lookout statute, the signal statute and the presumption statute were all involved. That case went to the jury on the alleged negligence of failing to keep a constant lookout and failing to give the statutory signals. The Arkansas statutes and constructions there involved, and which are here likewise involved, were in that case considered at length and we could not, if we tried, improve upon the exposition there made of the statutes and decisions mentioned. That case in many respects is quite similar to the cause at bar. Our Supreme Court ruled that section 8562, Crawford & Moses' Digest, which we have referred to as the presumption statute, as construed by the Arkansas Supreme Court, gave to plaintiff in that case a substantial and substantive right and that said statute was not a procedural one. If such be the case then the presumption of negligence arising from a showing of injury from a moving train would not take flight as we say in this State when the facts appear, but such presumption would remain and be weighed in the balance in arriving at a conclusion from all the facts including the presumption.

Our attention has been directed to the case of Allnut v. Mo. Pac., 8 Fed. (2nd) 604, which concerned the same Arkansas Statutes as here. That case was decided by the Federal Circuit Court of Appeals, Eighth Circuit, and under the facts there the court held as a matter of law that the negligence of the person struck on the crossing by a moving train was at least equal to the negligence of the railroad company and recovery was denied. But the facts of that case respecting the negligence of the person injured we regard as stronger than in the cause at bar. It appears in the opinion in Allnut v. Mo. Pac., supra, that the Arkansas lookout Statute is a legislative enactment of the last clear chance doctrine frequently termed the humanitarian rule. Whether the lookout statute is the only rule of the kind obtaining in Arkansas we do not know, and it is not necessary for us to attempt to ascertain. Our Supreme Court in the Hiatt case, opinion by Judge GRAVES, made the observation that the lookout statute of Arkansas more nearly corresponds to the vigilant watch ordinance of the City of St. Louis than to our last-chance doctrine.

We have perhaps extended the consideration of the assignment based on the demurrer beyond reasonable limits. It is our conclusion that the demurrer was properly refused.

Plaintiff's instruction No. 1 is challenged on the ground that it is broader than the lookout statute. The lookout statute makes it the duty of those in charge of trains to keep a constant lookout for persons and property *upon* the track. The instruction reads *on or near* the track. In St. Louis S. W. Ry. Co. v. Russell, 64 Ark. 236, 41 S. W. 807, the court had before it this same question and made disposition in this language:

"As the case must be retried, we will say, in response to argument of counsel that although the words of the statute are that a lookout shall be kept 'for persons and property upon the track,' yet, as the intention in requiring a lookout was to avoid needless injuries to persons and property, it is the duty of an employee keeping a lookout upon a moving train, to take notice of animals approaching the track in front of the train and so close to the track as to be within range of his vision while looking along the track."

Again the same point was ruled in Bush v. Brewer, 136 Ark. 256, 206 S. W. 322. There it was said: "It is said by the appellants that this instruction required its employees to keep a lookout for travelers on the highway, irrespective of whether they were upon the track; that the lookout statute only requires the employees to keep a lookout for persons and property upon the track. This statute has been construed to mean that the duty rests upon the employees of the railroad to use ordinary care to discover travelers or property on the highway approaching the train whether they are upon the track or not."

Complaint is made because of the refusal of defendant's instruction No. 8 A. This instruction reads as follows: "The court instructs the jury that the employee or employees of a railroad company operating an engine, upon seeing an automobile approaching the track are entitled to assume that the automobile will be stopped in a place of safety, unless there is something apparent in the way the car is being run or otherwise which would lead them to believe that the same was about to be placed in a position of peril, and the duty of the employees to take steps to prevent striking such automobile does not begin until it is *discovered* (Italics ours) that the same is likely to be placed in a position of peril. Hence, if you find from the evidence in this case that the fireman saw the automobile some distance ahead of the locomotive, he was not under the duty of taking any steps to have the train stopped until it became apparent that the automobile was about to be run into peril, and if after discovering that such condition was about to be brought about, he and the engineer immediately adopted every means of averting a collision, then upon the point of undertaking to avoid injury after discovering peril your verdict should be for the defendant."

In Huff v. Mo. Pac., 280 S. W. (Ark.) 648, cited supra, it is held that those operating a train have the right to assume that one would not drive upon the track in front of an approaching train. But one trouble with the refused instruction is that it advised that no duty rested upon those in charge of the train to take any steps to prevent injury until it was *discovered* that injury was likely or until it became apparent that the automobile was about to run into the danger zone. The case of Blytheville, L. & A. S. Ry. Co. v. Gesell, 250 S. W. (Ark.) 881, is relied upon to support this assignment. This case holds that the duty of those in charge of a train to take precautions begins *when they discover or should discover* the peril of the traveler. Other criticisms are made against the instruction, but it is not necessary to consider this assignment further. The instruction was properly refused.

Error is assigned on the manner of the cross-examination of J. O. Madison, defendant's fireman. On the cross-examination of witness Madison the following occurred:

"Q. I will ask you if you didn't testify as follows on the former trial of this case.

Mr. Sheppard: "We object to that. You can't seek out a piece of testimony without submitting the whole testimony to the jury.

The Court: "The objection is overruled.

Mr. Sheppard: "Save our exceptions.

"Q. I will ask you if you didn't testify as follows in the former trial of this case, and answer as follows: 'When did you become aware he was going to run upon the railroad with the truck?' and you answered, 'When he turned the curve was the first I thought he was in danger.' Is that correct? A. I don't know the exact words I said, it has been so long ago. I remember testifying, but I don't remember the exact words I used. If I did say it, it was true to the best of my knowledge. I did not see he was in danger when he made the curve to go north over the track. I thought he would stop. I saw him make the turn, but I didn't realize he was in danger till I saw he was not going to stop."

Counsel cite and rely upon Littig v. Urbaner-Atwood Heating Co., 292 Mo. 226, l. c. 247, 237 S. W. 779 and Slaughter v. Sweet & Piper Horse & Mule Co., 259 S. W. (Mo. App.) 131, l. c. 135, to support this assignment. In Rettlia v. Salomon, 308 Mo. 673, 274 S. W. 366, the Supreme Court explains the rule which should be followed a little plainer perhaps than is given in the Littig case. It is made plain in Rettlia v. Salomon, that it may not be necessary to read the whole deposition. In all the cases last cited it appears that detached portions of signed depositions were read. In the cause at bar there was no deposition. Counsel read from the transcript of the evidence given by the witness at a former trial of the cause in the Federal

Court in Arkansas. Unless the transcript of the evidence of the witness was signed by him or was so authenticated as to be admissible we cannot perceive in what manner counsel could have proceeded other than that followed. Counsel for plaintiff make the suggestion that there is nothing in this record to show that the witness Madison gave any testimony on the former trial except that about which he was asked. But if it be assumed that the rule announced in the Littig case and the others was trangressed, still we face the apparent fact that no harm could have come to defendant. There is nothing in the evidence formerly given by the witness, so far as appears, materially different from what he said in the present cause. Therefore he was not impeached and nothing disclosed which tended to show that he had changed his version. We considered a like assignment in Durbin v. Railroad, 275 S. W. 358. There the point was ruled on the ground that the complaining party had likewise sinned and was in no position to complain.

We have given this cause careful consideration and have reached the conclusion that the judgment should be affirmed and it is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.