ROSE HANNAH PREWITT (late HUMES), *et al.*, Respondents, *vs.* SUSANNAH MARTIN, Adm'x of WM. MARTIN, dec'd, Appellant.

1. *Evidence—Statements of third persons.*—The statements of third persons who do not sustain such relations to a party to a suit as to make such statements binding upon him, cannot be received in evidence.
2. *Witnesses—Impeachment of by contradictory written statements—Whole writing must be read—Depositions—Jury.*—In impeaching the credit of a witness by proof of contradictory written statements, the writing, if in existence, must be shown to the witness; and if admitted to be his, the witness cannot be asked if certain statements are contained in it, but the instrument itself must be read as evidence.; and where a part of it is read in the presence of the jury the opposing party is entitled to have the whole read; and this rule applies where the writing is a deposition given by the witness.
3. *Action for money loaned—Sale—False representations.*—In an action for money loaned, where defendant alleged a sale to him by plaintiff of the chose in action, from which the money was realized, it is competent for the plaintiff to show that the instrument purporting to sell the right, was obtained by false representations of its character and contents, showing that there never had been any sale.
4. *Instructions, erroneous—When not ground for reversal.*—Instructions which taken alone might mislead the jury, but taken in connection with others work the appellant no substantial injury, are not ground for a reversal.

*Appeal from St. Louis Circuit Court.*

*Daniel Dillon,* for Appellant.

I. Plaintiff's second instruction mis-stated the law. It told them that to establish fraud on part of defendant they had to find but these three facts : 1st. That at the time of sale plaintiff did not know the amount of the money in her guardian's hands. 2nd. That defendant did know. 3rd. That defendant did not tell plaintiff, without reference to whether he knew or had reason to believe her to be ignorant on that point or not, and without reference to why he did not inform her, and without reference to whether or not he was under any obligation to communicate to her such information. This is not the law. Where no confidential relation exists between the parties to a sale, either of them may remain silent and avail himself of his superior knowledge as to facts and circumstances equally open to the observation of both parties, or

within the reach of ordinary diligence, and is under no obligation to draw the attention of the other to circumstances affecting the value of the property in question, even though he may know him to be ignorant of them. (Kerr Fraud & Mist., 97 [Am. Ed.] ; 1 Sto. Eq., §§ 204, 207, 212, and note ; Adams' Eq., side p. 178 [Am. Ed.] ; 2 Kent., 644, 11 Ed., & 484, 12 Ed., Sto. Sales, 332 and foll.; Fox vs. McKreth, 2 Bro. C. R. 420 ; Laidlow vs. Organ, 2 Wheat., 195 ; Kintzing vs. McElrath, 5 Barr, 467; Harris vs. Tyson, 24 Pa. St., 347 ; But. App., 26 Pa. St., 63 ; Matthews vs. Bliss, 22 Pick., 48 ; Barnett vs. Stanton, 2 Ala., 182 ; Jones vs. Quick, 28 Ind., 125 ; Smith vs. Beaty, 2 In. Eq., 458 ; 1 Smith Lead. Cas., side page, 255 [6, 7, Am. Ed].

Again, the instruction told the jury that if they found certain facts, it would constitute fraud and make the sale void and of no effect, unless plaintiff, after learning all the facts, ratified said sale. A sale effected by fraud is not void but voidable at the option of the party defrauded, and is effective till rescinded. The law does not require that the party defrauded, when he learns the facts, shall ratify the sale in order to render it effective; but on the contrary, that he should rescind, if he does not want it to remain in force. (2 Par. Con., 780, 781, 782 & note [5 Ed].

II. The court erred in giving instruction marked No. 1. This instruction told the jury that if defendant obtained the bill of sale by fraudulent representations, it passed no title, without reference as to whether or not the representations were in regard to material matters or were matters of opinion, or were in regard to matters equally open to the observation of both parties, or were such as plaintiff had any right to rely on, and without reference as to whether or not plaintiff could, by the use of ordinary diligence, have ascertained the truth of the matter in regard to which the representations were made. False representations, in order to render voidable an executed sale, must be, 1st. In reference to material matters. 2nd. In reference to matters not merely of opinion. 3rd. In reference to matters not equally open to the observa-

tion of both parties. 4th. In reference to such matters as the other party had a right to rely upon. 5th. In reference to matters of which the other party could not, by the use of ordinary diligence, ascertain the truth. (1 Sto. Eq., §§ 191, 195, 197, 199, 200 ; Rockafellow vs. Baker, 41 Penn. St., 320 ; Tindall vs. Harkinson, 19 Georgia, 448 ; Langdon vs. Greene, 49 Mo., 363.)

Again, this instruction told the jury that if defendant obtained the bill of sale by false representations, or by fraud, it was void. This was telling the jury that the false representations need not amount to fraud in order to avoid the sale, which is not the law.

*Gottschalk*, for Respondent.

I. The very theory of the defense, that defendant had purchased from plaintiff $450 in money, for $100 ; or had settled plaintiff's claim of $350 for $50, is presumptive of fraud.

II. The instruction, that if defendant knew the amount of money coming to plaintiff, from her guardian, and concealed it, that this constitutes fraud, of which defendant complains, is evidently good law. (Barr vs. Baker, 9 Mo., 850.) Likewise, when it is duty to speak, silence constitutes fraud. (Bispham Prin. Eq., 211, §§ 213, 218.)

HOUGH, Judge, delivered the opinion of the court.

This was an action for money loaned by plaintiff to defendant. Defendant, in his answer, denied that any loan was ever made by plaintiff to him, of the money in question, and alleged, in substance, that on September 14, 1868, he purchased from the plaintiff, and took a bill of sale for, all her interest in a certain fund, then in the hands of her guardian, the amount of which neither she nor defendant knew at the time, and that the sum received by defendant, under said purchase, from said guardian, was the same money alleged to have been loaned to defendant and sued for by plaintiff; that said sum having proved to be larger than was expected by plaintiff, she became dissatisfied, and demanded that a portion thereof be

returned to her, and that afterwards, on July 3, 1869, she and defendant compromised and settled all their differences in relation thereto, the defendant paying plaintiff the sum of fifty dollars, and the plaintiff receiving the same in full settlement and satisfaction of all claims or demands which she had, or claimed to have, against him on account of any money received by him of her guardian.

Plaintiff replied, denying the alleged ignorance of herself and defendant of the amount of money belonging to her in the hands of her guardian ; also, the alleged sale of her interest in the same, and the alleged compromise and settlement, and charged that she was induced to sign the bill of sale and receipt, set up by defendant, by false and fraudulent representations of defendant to her, as to their contents, and prayed judgment as in her petition.

It appears, from the testimony, that the plaintiff, soon after coming of age, for and in consideration of the sum of one hundred dollars, executed and delivered to the defendant a bill of sale for all her interest in her father's estate, then being or that might thereafter come into the hands of her guardian, and authorized him to collect the same. The consideration expressed on the face of the bill of sale, was four hundred dollars, and the estate consisted of money in the guardian's hands, amounting to four hundred and fifty dollars. After the defendant received the money, plaintiff and defendant both receipted for the same to the guardian. According to defendant's testimony, some dispute arose between them as to whether the money was loaned to defendant or absolutely transferred to him, and he, thereafter, by way of compromise and settlement of their conflicting claims, gave plaintiff the sum of fifty dollars, and took from her a receipt in full of all money collected by him of her former guardian. This receipt is referred to in defendant's instructions, as exhibit "A." The testimony for the plaintiff strongly tended to show that she was ignorant of the true character of both these instruments, signed by her, being unable to read manuscript, though able to write her name ; she

testifies that she had previously borrowed from defendant the sum of one hundred dollars, and that she thought, in signing the bill of sale, that she was only enabling the defendant to collect the money belonging to her in her guardian's hands and hold the same as security for the sum so borrowed. No satisfactory explanation was given for inserting a consideration of four hundred dollars in the bill of sale, when the sum really paid was only one hundred dollars. The defendant himself testifies that he does not know why it was inserted. It further appears, that the plaintiff herself received the said sum of four hundred and fifty dollars from her guardian, in the presence of the defendant, and afterwards, as she testifies, delivered it to him as a loan to the extent of three hundred and fifty dollars, the amount remaining due to her after deducting the one hundred dollars previously borrowed, which sum of three hundred and fifty dollars, defendant then promised to return to her on the following Saturday. Testimony was introduced, tending to show ignorance on the part of the plaintiff, and knowledge on the part of the defendant, of the amount of plaintiff's patrimony, and a fraudulent purpose on the part of defendant prior to the execution of the bill of sale, to possess himself of the same, for the sum of one hundred dollars.

Defendant testified to the utmost good faith, on his part, in making the alleged purchase, denied all knowledge at the time of the real amount in the guardian's hands, and in support of his own, introduced other testimony to show that plaintiff was correctly informed of the contents of the bill of sale and receipt, before they were signed by her. He also offered to prove, as a reason for making the purchase and as showing the estimated value of the plaintiff's estate, certain statements made to him by Mrs. Alton, with whom plaintiff at the time, resided as a member of her family, which statements were by the court excluded, and defendant excepted. On the cross-examination of the plaintiff, defendant read to her portions of her deposition, taken in the cause, and asked her whether she had sworn to the same when her deposition was taken,

and she answered that she supposed so. The court thereafter permitted the plaintiff's counsel to read in evidence the whole of said deposition, against the objections of the defendant to which action of the court, the defendant excepted. There was testimony tending to show a promise by the defendant, after the dispute arose as to the nature of the transaction between him and plaintiff, to pay back to plaintiff the money received by him from her guardian.

The following instructions were given at the instance of the plaintiff, against the defendant's objections.

1. "The court instructs the jury, that if they believe from the evidence, that the defendant, by false representations or by fraud, obtained from said plaintiff the bill of sale introduced in evidence, then said defendant can derive no right or title under the same, and the jury should disregard said bill of sale, unless they are satisfied that after all the facts had come to plaintiff's knowledge she acquiesced in and ratified the same."

2. "If the jury find from the evidence, that, at the time of the making of the bill of sale, plaintiff was ignorant of the amount of money in her guardian's hands, but also find that defendant knew how much there was, and if they further find that defendant failed to disclose such fact to plaintiff and allowed her to be and remain in the belief that the amount of such money was only about seventy-five dollars, then such failure to disclose said fact, on the part of defendant, constitutes fraud, and makes the bill of sale void and of no effect unless she subsequently, after finding out the facts, ratified said bill of sale."

3. "The court instructs the jury, that if they believe from the evidence, that defendant was indebted to plaintiff in the sum of three hundred and fifty dollars, for money loaned, that then such debt could not be discharged by the mere payment of fifty dollars, without any further consideration."

The 4th instruction is not complained of and relates to the alleged compromise.

5. "If the jury find for the plaintiff, they will assess the amount of her damages, the amount of the indebtedness at the time it became due, and compute and add to said sum interest thereon at the rate of six per cent. per annum from said date to the present, and then deduct therefrom the amount of fifty dollars with interest at six per cent. from July 3, 1869."

The following instruction, asked by the defendant, was refused by the court, and defendant excepted.

"If the jury believe from the evidence, that after defendant had received the $450 spoken of by the witnesses, there was a dispute and controversy between plaintiff and defendant, as to whether or not defendant should pay or was under obligations to pay any of that money to plaintiff, and that plaintiff agreed with defendant to accept and receive $50 in full settlement and satisfaction of such dispute and controversy, and that in accordance with said agreement, defendant paid $50 to plaintiff, who received and accepted the same, and signed the paper marked exhibit 'A,' read in evidence, then the jury will find in favor of defendant."

In order that the force of the objections to the action of the court, in reference to the foregoing instructions, may correctly appear, the instructions given by the court at the instance of the defendant, though lengthy, will be inserted. They are as follows:

1. "The court instructs the jury, that the burden of proof is on plaintiff to prove fraud or misrepresentation practiced on her by defendant, and unless plaintiff has proven such fraud or misrepresentation, to the satisfaction of the jury, then the jury will disregard, entirely, the charges of fraud and misrepresentation made by plaintiff against defendant."

2. "The jury are instructed that plaintiff, in order to recover in this action, must overcome the legal effect of the paper of assignment read in evidence and dated September 14, 1868, and unless she proves to the satisfaction of the jury that she signed the paper in consequence of fraud or misrepresentation practiced upon her by defendant, the jury will find in favor of defendant."

3. "The jury are instructed that plaintiff, in order to recover in this action, must overcome the legal effect of the paper marked exhibit 'A' read in evidence, and if the jury believe from the evidence, that at the time plaintiff signed said paper there was a dispute and controversy between plaintiff and defendant as to whether or not defendant was liable to pay plaintiff any of the money in controversy in this action, then the jury will find in favor of defendant, unless plaintiff proves to the satisfaction of the jury that she signed said paper in consequence of the fraud or misrepresentation practiced upon her by defendant."

4. "If the jury believe from the evidence, that plaintiff signed the paper read in evidence, dated September 14, 1868, intending thereby to assign and transfer to defendant all her interest in the money belonging to her in the hands of Alexander Martin, her guardian, and which assignment she intended defendant should hold as security for the $100 which plaintiff, at the time of such assignment and transfer, received from defendant, then the jury will find in favor of defendant."

5. "If the jury believe from the evidence, that after defendant had received the $450 spoken of by the witnesses, there was a dispute and controversy between plaintiff and defendant as to whether or not he was under obligations to pay her any of that money, and that, without any fraud practiced upon her by defendant, plaintiff agreed to accept and did receive and accept from defendant $50, in full settlement and satisfaction of said dispute and controversy, did sign the paper read in evidence, marked exhibit 'A' then the jury will find for the defendant."

6. "If the jury believe from the evidence, that for $100, paid to her by defendant, plaintiff sold to defendant all her right to and interest in the money in controversy in this action, and signed the paper read in evidence, dated September 14, 1868, without any fraud or misrepresentation practiced on her by defendant, then it is immaterial whether or not defendant, after such purchase, told plaintiff or any other person that he would pay back to plaintiff all or any part of such

money, and if the jury believe that defendant made such statements, the jury are instructed to disregard the same."

7. "If the jury believe from the evidence, that at the time plaintiff signed the paper read in evidence, dated September 14, 1868, the same was read over to her and its contents made known to her, and that she signed the same without fraud or misrepresentation on part of defendant, then the jury in determining what the agreement was between plaintiff and defendant at the time plaintiff received from defendant the $100 spoken of by the witnesses, will be guided solely by said paper, and the jury will disregard any conversation or conversations, or statement or statements, of plaintiff or defendant in reference to what that contract was, made before or after the signing of that paper."

There was a verdict and judgment for the plaintiff, which was affirmed at General Term, and defendant has appealed to this court.

The statements of Mrs. Alton, which defendant offered to prove, were properly excluded. No such relation was shown to exist between her and the plaintiff as would make her statements binding upon the latter, and besides, it is conclusively shown, by the insertion of the sum of $400 as the consideration in the bill of sale, that no representations of Mrs. Alton as to the value of plaintiff's estate, could have possibly misled the defendant into unwittingly purchasing the same for less than one-fourth its value.

Defendant contends that the action of the court, in permitting the whole of plaintiff's deposition to be read to the jury was erroneous and not warranted by the rule laid down by this court in the case of the State vs. Phillips, (24 Mo., 475.) In that case, the defendant, for the purpose of discrediting the prosecuting witness, read portions of his depositions taken before the magistrate and coroner. The whole of the depositions were then read on behalf of the State. The court say, "As the defendants read part of the depositions, with a view to contradict the witness, the prosecution was entitled to read the whole of them in order to show his consistency."

In the case at bar, defendant's counsel contends that he read no portion of plaintiff's deposition to the jury, but only read extracts to the witness, and asked her whether she swore to the same. We do not think the rule in regard to the cross-examination of witnesses as to contradictory written statements can be evaded in this way. A deposition stands upon precisely the same footing, in this regard, as other written documents. (2 Phil. Ev., side p. 968.) And the rule is, in impeaching the credit of a witness by proof of contradictory written statements, that the writing, if in existence, must be produced and shown to the witness, and if it be admitted to be his, counsel cannot inquire of the witness whether or not certain statements are in the instrument, but the instrument itself must be read as evidence. The deposition in this case, having been shown to be that of the plaintiff, it was itself the best evidence as to whether it contained contradictory statements, and should have been read to the jury; and the reading of a portion of it, in the presence and hearing of the jury, was evidently treated by the court as a reading of the same to the jury, and plaintiff's counsel were properly allowed to read the whole deposition. 1 Greenl. Ev., §§ 463, 465; Redf. Ev., § 467; 2 Phil. Ev., top pp. 807, 809.

Greenl. Ev., § 467, cited by defendant's counsel, applies only to oral statements.

The objections made to plaintiff's first instruction are: that the use of the words "by false representations or by fraud," was calculated to mislead the jury, inasmuch as they implied that any false representation, or misrepresentation, which is the same thing, that did not amount to fraud, would invalidate the sale, and further, that it told the jury that a bill of sale, so acquired, was not only voidable but void.

By reference to the foregoing instructions, it will be seen that the words "fraud or misrepresentation" are used by defendant's counsel in five of the instructions given at his instance, and if his criticism of the language employed in this instruction were just, it is evident that its refusal would have placed him in no better situation. The distinction taken between things void and voidable has no application here.

This was not an action for money had and received, in which a recovery was sought on the ground that the sale of plaintiff's interest, in the money in question, had been procured by fraud, but it was an action for money loaned, the plaintiff proceeding upon the theory that there never was in fact any sale, fraudulent or otherwise, and that the bill of sale which evidenced a different contract, was procured to be signed through fraud and misrepresentation, as to its character and contents. Hence, all the arguments of defendant's counsel as to void and voidable contracts, and misrepresentation as to material matter and matters equally open to the observation of both parties, in short, as to the whole doctrine of fraudulent sales, have no application to this case. If the transaction were in reality a fraudulent sale, plaintiff could not recover in this action. The instruction under consideration, was consistent with the plaintiff's case, it was the converse of defendant's second instruction and there was no error in giving it.

There was no error in giving plaintiff's third instruction; it did not relate to the compromise, as is shown by the fourth instruction, but proceeded upon the theory that the defendant was indebted to the plaintiff for money loaned.

Plaintiff's fifth instruction is objected to as announcing an incorrect rule for the computation of interest. It is sufficient to say, upon this point, that the mistake is in the defendant's favor and he cannot complain of it. The instruction asked by the defendant and refused by the court, was given almost word for word, with a proper qualification, in defendant's fifth instruction, and this action of the court cannot be seriously urged as error.

The second instruction given for plaintiff is, in itself, not free from objection. As an abstract proposition of law, it perhaps needed some qualification, besides, it was applicable to a case different from that made by the plaintiff's pleadings; but taken in connection with the extremely favorable instructions given for the defendant, we are all of the opinion that it worked him no substantial injury, and that the judgment is for the right party. Judgment affirmed.