*(Continued from Vol. 180.)*

## SWIFT & COMPANY, Appellant, v. C. B. SCOTT & COMPANY, Respondent.

### St. Louis Court of Appeals, February 3, 1914.

1. **APPELLATE PRACTICE:** Review of Instructions: Prerequisites. Instructions given are not reviewable, on appeal, unless appellant complained of the giving of them in his motion for a new trial.

2. **EVIDENCE:** Hearsay. In an action for goods sold to a firm, in which it was sought to charge defendant with liability as a partner, evidence by a third party that he had heard a conversation between defendant and the alleged partner, in which defendant remonstrated with the alleged partner for printing his name on stationery for the firm, stating that he was not a member of the firm and that the alleged partner had no authority to use his name in connection therewith, was hearsay, as against plaintiff, and inasmuch as the issue as to whether defendant was or was not a member of the firm was the only issue in the case, the admission of this evidence was reversible error.

3. ———: ———. The substance of the rule against hearsay evidence is, that it inhibits, as such, evidence not given under the sanctity of an oath and in a manner affording an opportunity to the adverse party for cross-examination.

181 Mo. App.]                    (1)

4. **WITNESSES: Impeachment: Necessity of Laying Foundation.** Where a witness was not interrogated concerning whether she had made contradictory statements to those given by her on the stand, nor as to whether she had made an affidavit containing statements inconsistent with her testimony, it was error to admit the affidavit in evidence.

5. **EVIDENCE: Hearsay: Ex parte Affidavits.** An affidavit given by one not a party to the suit is admissible only to impeach the affiant upon the laying of a proper foundation; and it is error to admit the affidavit of such person in evidence under any other circumstances.

Appeal from St. Francois Circuit Court.—*Hon. Peter Huck,* Judge.

REVERSED AND REMANDED.

*Merrill Pipkin* and *Edward A. Rozier* for appellant.

(1) The admission of affidavit of Cordelia Meadows and Charles Meadows was prejudicial error, as same was hearsay testimony. Dogherty v. Dogherty, 155 Mo. App. 481; Oak Lawn Sugar Co. v. Spark, 159 Mo. App. 496; Northrup v. Colter, 150 Mo. App. 639; Prewitt v. Martin, 59 Mo. 325; Blooms Sons Co. v. Haas, 130 Mo. App. 122. (2) The testimony of C. E. Abshier as to statements made by C. B. Scott was error, for same were self-serving statements. Hitt v. Hitt, 150 Mo. App. 631; Blasland v. Hicks, 70 Mo. App. 301; Nelson v. Railroad, 66 Mo. App. 647; Citizens Bank v. Durrill, 61 Mo. App. 543.

NORTONI, J.—This is a suit on an account for goods sold and delivered to defendant as copartners. It appears that defendant C. B. Scott alone defended on the theory that he was not a member of the partnership, and the finding and judgment were in his favor on that issue. From this judgment plaintiff prosecutes the appeal.

Plaintiff is engaged in the sale of dressed meats to butchers. It appears that defendant Scott is a farmer and resides on a farm several miles from Desloge, Missouri, but he owns a building at Desloge and formerly operated a butcher shop therein. However, for some months prior to the opening of the butcher shop involved here, he had resided on his farm in St. Francois county, having sold or closed his butcher shop some time before. About February 1, 1909, a butcher shop was opened for business in defendant Scott's building at Desloge, under the firm name of C. B. Scott and Company. N. L. Meadows, a nephew of Scott, was in charge of the butcher shop and appeared to be the active member of the copartnership. The evidence reveals that a painted sign bearing the name of "C. B. Scott and Company" was upon the building, and the business was all done under that name. Indeed, the purchases of meats from plaintiff were made by Meadows, in charge of the business, under the name of C. B. Scott and Company. Such payments as were made on account for purchases were by check on the bank, signed "C. B. Scott and Company," by Meadows. Meadows sought to purchase goods under the partnership name, and plaintiff's credit department investigated the financial standing of the firm. It found that C. B. Scott, though living on his farm in the country, was responsible, and sold the goods to Meadows as the active member of the firm of C. B. Scott and Company on the credit, of course, of both, but more particularly on that of his uncle, defendant here.

The account in suit amounts to $224.36. The first item appearing thereon is of date April 7, 1909, and the last item, May 12 of the same year. About May 15, Meadows closed the butcher shop and, it is said, "decamped" for some reason to plaintiffs unknown. His mother, defendant Scott's sister, went to her brother's farm immediately and requested him to come and take charge of the business. He came to Desloge and

sought to collect some of the accounts, took into his possession ninety dollars of money that had been collected on accounts and left with his mother by Meadows, and paid a part of that to Armour & Company and about thirty dollars to this plaintiff on account. However, defendant denied that he was a partner or in any wise interested in the business, and testified that he so stated to plaintiff when he made the payment, saying that he paid this amount on the account merely for the purpose of prorating on the debts of the concern such moneys as came into his hands from his nephew.

It is defendant's theory that he was not a partner with his nephew at any time, but he admits having discussed the matter of entering into partnership with him immediately prior to the opening of the butcher shop. By a letter in evidence, written by defendant Scott to plaintiff on May 30, 1909, it appears that he impliedly admitted that he had been a member of the firm, but says he had severed his connection with the firm of C. B. Scott and Company and notified plaintiff's traveling man, Mr. Jolly, of that fact the first time he met him. That date appears to have been March 31, 1909, or a few days before the first item on the account involved here. The record abounds with evidence tending to prove defendant Scott was a partner with Meadows, but, as before stated, he insistently denies it, and this was the only issue tried in the case. The account is not disputed and it seems to be conceded that plaintiff sold and delivered the meats to C. B. Scott and Company at the instance of Meadows, who was in charge of the butcher shop. Defendant put the matter of partnership at issue by a verified answer, as the statute requires, and insisted throughout that he did not know the business was being conducted in his name. His testimony goes to the effect that he was living on the farm and did not visit the town of Desloge but three times during the interim while the

butcher shop was being conducted there, and on none of these occasions did he notice that the sign on the shop bore the name of "C. B. Scott and Company." On the other hand, his sister, Mrs. Meadows, testifies that her brother, defendant Scott, employed a painter by the name of Bailey to make the sign, "C. B. Scott and Company" and caused it to be placed upon the building. According to the evidence of plaintiff's credit man, defendant called on him after Meadows had taken his leave from Desloge, paid thirty dollars on the account, and asked six months' time in which to settle the balance. For this he agreed to give a note, but afterwards declined to do so. After Meadows took his leave, about May 15, and defendant Scott found himself unable to collect the outstanding accounts, the shop was closed until some time in August, when defendant reopened it. He says he purchased it then from Meadows' father and mother and paid them ninety-two dollars therefor and gives in evidence a bill of sale signed by those parties to that effect. Defendant's sister, Mrs. Meadows, says they had mortgaged their property to start her son, young Meadows, in the business together with his uncle, Scott, and they executed the bill of sale to release their claims, if any, in consideration that Scott was to pay the debts of the partnership. But be all of this as it may, the case was tried solely on the issue whether or not defendant was a member of the firm, for he denied it, and the jury found that he was not.

There is some complaint in the brief with respect to the instructions given on the part of defendant, but it appears that no point was made with respect to the instructions in the motion for a new trial and, therefore, we may not review them here, for plaintiff must be treated as having waived the questions thus sought to be raised by omitting to invite the trial court's attention thereto in the motion.

But the record is replete with error touching the matter of the reception of evidence, and this, too, over the objections and exceptions of plaintiff. It appears that the stationery used in the butcher shop bore the name of "C. B. Scott and Company, Dealers in Meats, Vegetables, etc.," but defendant Scott insists he had no knowledge of this fact. Meadows had ordered a new supply of stationery about the ninth of May, and it was delivered in the shop by the local printer on May 10, or some four or five days before Meadows closed the shop and quit business. Defendant put Abshier, the local printer, on the witness stand, and over the objection and exception of plaintiff, was permitted to show by him that he printed the stationery at the instance of Meadows and upon taking it to the butcher shop for delivery, May 10, found defendant Scott present; that Scott looked at it and upbraided his nephew for having his name printed thereon, saying that he was not a member of the firm and that Meadows had no authority to use his name in connection therewith. Of course, this testimony was incompetent under the rule against hearsay, for neither plaintiff nor anyone representing it was present at the time, and it amounted to no more than a self-serving declaration made by one alleged partner to another in the presence of a sheer outsider. The substance of the rule against hearsay is, that it inhibits, as such, evidence not given under the sanctity of an oath and in a manner which affords no opportunity for cross-examination to the adverse party. [See Hitt v. Hitt, 150 Mo. App. 631, 131 S. W. 369.] It is clear that, in this case, where the only issue on trial was that pertaining to the question as to whether defendant Scott was or was not a member of the firm, this evidence given by Abshier concerning Scott's declarations to his alleged partner, Meadows, in the absence of plaintiff, was highly prejudicial and should have been excluded. Whatever may be said touching the competency of this

evidence in a contest between partners *inter sese*, it is improper here when the question at issue is in suit with a third party who has relied upon the ostensible partnership in the eye of the public, for it purports to be no more than a private remonstrance on the part of Scott and in no wise tends to disprove the fact that he was publicly held out as a partner. Such self-serving declarations made by a party to the suit in the absence of his adversary are wholly incompetent, for the reason that they violate the rule against hearsay, in that they are not made under oath, and the opposite party is afforded no opportunity to cross-examine with respect to them; moreover, for the further reason that they may be concocted for the mere purpose of giving in evidence with a view of influencing the jury on a trial of the issue, and the adverse party is given no opportunity to search or sift them. It is to be observed, too, that the declaration so made by defendant was made on the tenth day of May, but two days prior to the last item of the account sued on, and but four days before the business was closed when Meadows "decamped." Obviously, this evidence was incompetent and it should have been rejected. [See Bank v. Durrill, 61 Mo. App. 543; Shoe Co. v. Hilig, 70 Mo. App. 301; Nelson v. Kansas City, etc., R. Co., 66 Mo. App. 647.]

Cordelia Meadows, sister of defendant Scott and mother of his alleged copartner, was a witness in the case for plaintiff, but no inquiry whatever was propounded to her as to whether or not she had made contradictory statements to those given on the stand, nor as to whether she had given an affidavit that her brother was not a partner with her son in the butcher business. Charles Meadows, the young man's father, does not appear to have been a witness on either side. Notwithstanding this, defendant Scott introduced, over the objections and exceptions of plaintiff, an affidavit made on the eleventh day of November, 1909, signed

by both Cordelia Meadows and Charles Meadows, to the effect that C. B. Scott, defendant, was not in any way interested or associated with their son, N. L. Meadows, in the butcher business between February 15, 1909, and June 1, 1909, in Desloge, Missouri. This was obviously incompetent and should have been rejected. This purported affidavit of Mrs. Meadows is, no doubt, competent by way of impeaching her testimony, if a proper foundation were laid therefor by exhibiting the paper to her and propounding appropriate inquiries concerning it, and if it is proved, by then admitting it as contradictory matter. [Prewitt v. Martin, 59 Mo. 325.]   But no excuse whatever can be conjured for receiving it in evidence as a statement made by Charles Meadows, her husband, for he was not even a witness in the case. However, no foundation was laid, as before stated, authorizing it to be received by way of the impeachment of Mrs. Meadows. Charles Meadows was a competent witness, and if it were desired to show by him that Scott was not a partner with his son, he should have been produced and examined or his deposition taken, so that plaintiff would have been accorded the right of cross-examination. The affidavit was hearsay, to say the least. [See Fougue v. Burgess, 71 Mo. 389.]

These errors are obviously prejudicial and because of them the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.