ORBITT S. PEPPERS and LOTTIE PEPPERS, Appellants, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.—295 S. W. 757.

Division Two, April 9, 1927.

1. **DEMURRER TO EVIDENCE: Error in Instructions.**  In the absence of facts demonstrating plaintiff's right to recover, other errors become nonprejudicial, and will not be considered on appeal.

**2. WHISTLING POST: Maintenance: Crossing of Byway: Failure to Give Signal.** Evidence that the company had maintained a railroad crossing for thirty years, and that for two or three years previous to the collision of the eastbound passenger train with an automobile, a whistling post had been maintained 1320 feet west of the crossing, put upon the company the same obligation, in the exercise of due care and caution, of sounding the whistle at the post as if it had been erected in compliance with the statute; and, even though the road crossing the tracks was not public, the erection of the whistling post by defendant was evidence that defendant considered the crossing dangerous, and created the duty to blow the whistle at the whistling post, and failure to do so was negligence.

**3. OBSTRUCTION OF VIEW: Other Train at Crossing: Failure to Give Signal.** An automobile, in which deceased was a guest, riding in the back seat, approached a crossing over defendant's parallel railroad tracks. A westbound freight train stood on the near track, and moved forward far enough to permit the automobile to pass and then stopped. The automobile then attempted to cross and was struck by an eastbound passenger train. The engineer and fireman of the eastbound train stated they saw the westbound train; the engineer stated that he could not tell whether it was standing or moving; the fireman, that it was standing when they first passed its west end. **Held,** that both engineer and fireman knew that the westbound train was near the crossing and knew that it obstructed the view of persons crossing the tracks behind it, and as it was a day when they should have expected travelers might cross the tracks, ordinary precautions required the continuous ringing of the engine bell, and, at reasonable intervals at least, the sounding of the whistle; and particularly so, where the fireman at a considerable distance from the crossing saw a brakeman on the back end of the westbound train signaling to them.

**4. NEGLIGENCE: Negative Evidence.** Negative evidence of the failure of the engineer and fireman of a train approaching a crossing, where the conditions are such as to require them to use care and caution to avoid injury to travelers, to sound the whistle and ring the bell, is evidence of negligence, and of sufficient probative force to carry the case to the jury as a proximate cause of a collision of the train with an automobile attempting to cross the tracks behind a freight train on parallel tracks.

**5. ————: Instruction for Plaintiff: Embracing Defense.** An instruction hypothesizing the facts entitling plaintiff to recover, which, among other things, requires the jury to find that at the time of the collision "deceased was in the exercise of ordinary care," sufficiently embraces the defense of contributory negligence.

**6. ————: Of Driver of Automobile: Imputed to Guest.** The negligence of the driver of an automobile cannot be imputed to a guest riding in the back seat; but the guest may rely upon the driver's conduct if it is such as to induce a reasonably prudent person to think there is no danger in driving the car across railroad tracks.

**7. CONTRIBUTORY NEGLIGENCE: Instruction: Covered by Others.** The giving of one instruction which simply tells the jury that the burden is upon defendant to prove the contributory negligence of deceased does not authorize the refusal of another which not only is of the same import but goes further and tells them what facts they are to consider in determining whether deceased was guilty of contributory negligence; and particularly so, where the plea of contributory negligence attempts to impute to deceased the negligence of the driver of an automobile in which she was riding as a guest.

**8. ————: Instruction: Technically Correct: Misleading.** An instruction for defendant telling the jury that, if they find that "the driver of the automobile attempted to drive over the railroad tracks at the crossing without

316 Mo.—70.

looking and listening, he was guilty of negligence; and if such negligence of the driver was the sole cause of the death of deceased, plaintiffs cannot recover" is technically correct as far as it goes, but it is misleading in that it fails to inform the jury that the driver's negligence cannot be imputed to deceased, a guest riding in the back seat, in determining whether his negligence was the sole cause of the collision. And the giving of it was error, and particularly so where the whole evidence tends to show more than the negligence of the driver as the sole cause of the injury, but it may be inferred from it that the negligence of the defendant was either a concurring cause or the sole cause.

9. **INSTRUCTION: Burden of Proof.** An instruction telling the jury that "by the terms 'burden of proof' and 'preponderance of the evidence' the court intends no reference to the number of witnesses testifying concerning any fact, or upon any issue in the case, but simply uses these terms by way of briefly expressing the rule of law, which is, that unless the evidence (as to such issue) appears in your judgment to preponderate, in respect to its credibility, in favor of the party on which the burden of proof (as to such issue) rests, then you should find against such party on said issue" is erroneous, and should not be given, but whether only harmless error is not determined on this appeal because the case must be remanded for other errors.

10. **PUBLIC ROAD: Public User: Permission to Use.** Whether the public has acquired a right by way of user in a railroad crossing does not depend upon the permission of a witness to people to use it in crossing at the time of the collision of an automobile with a train.

11. **NEGLIGENCE: Concurrent: Argument to Jury.** Where the evidence tends to show that defendant's negligence was the proximate cause of the collision, and that the driver of the automobile was guilty of concurrent negligence, it is error to refuse to permit counsel for plaintiff to argue that defendant is responsible for the concurrent negligence of both, and that deceased met her death as the result of such concurrent negligence.

12. **WITNESS: Impeachment by Deposition.** The impeaching party may read, by question and answer, that portion of a witness's former deposition that tends to impeach his testimony, and must read all portions of it that bear on the particular questions and answers about which the witness is interrogated, and then the opposite party may read the remainder of the deposition that is relevant and competent; but the impeaching party is not permitted to garble the questions and answers and to intimate that the witness is telling a different story than the one found in his deposition as thus garbled. [Explaining Littig v. Heating Co., 292 Mo. 226.]

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2541, p. 650, n. 37. **Negligence,** 29 Cyc., p. 550, n. 55. **Railroads,** 33 Cyc., p. 965, n. 81; p. 1016, n. 70; p. 1128, n. 63; p. 1130, n. 86; p. 1138, n. 28; p. 1139, n. 32. **Trial,** 38 Cyc., p. 1486, n. 66; p. 1749, n. 3; p. 1752, n. 37. **Witnesses,** 40 Cyc., p. 2749, n. 8; p. 2750, n. 14 New.

Appeal from Circuit Court of City of St. Louis.—*Hon. Robert W. Hall,* Judge.

REVERSED AND REMANDED.

*Douglass & Inman* for appellants.

(1) The court erred in refusing to give and read to the jury Instruction B, requested by plaintiffs, which presented plaintiffs' the-

ory of this case, as there was no other instruction given covering plaintiffs' theory. Coleman v. Roberts, 1 Mo. 27; Cohn-v. Peid, 18 Mo. App. 135; Wren v. Railways Co., 129 Mo. App. 596; Redens v. Redens, 29 Mo. 470; Kraft v. McBoyd, 32 Mo. App. 399; Salzman v. Tea Co., 236 S. W. 907; Jennings v. Cooper, 230 S. W. 325; Evans v. Klusmeyer, 257 S. W. 7039; Bank v. Wells, 274 S. W. 939; Rooker v. Railway Co., 204 S. W. 556; Smith v. Southern, 210 Mo. App. 288; Miller v. Railways Co., 247 S. W. 230; Collins v. Rankin Farms, 180 S. W. 1053; Warehouse & Storage Co. v. Tooney, 181 Mo. App. 64; Northam v. United Rys. Co., 176 S. W. 229; Davitt v. Railroad Co., 50 Mo. 302; Harris v. Railroad Co., 263 Mo. App. 324. (2) The court erred in refusing to give and read to the jury Instruction C, offered by the plaintiffs, which told the jury that the burden of proof was on the defendant to prove, by a preponderance of the evidence, that decedent was guilty of contributory negligence, and also in determining whether decedent was guilty of negligence. All that the law required of her in order to be in the exercise of ordinary care was that she use such care as an ordinarily prudent person, riding in an automobile as a passenger or guest, would have used at the time and under the circumstances. This was a correct declaration of the law and the instruction should have been given. Hiatt v. Railroad Co., 271 S. W. 806; Banker v. Wells, 274 S. W. 939; Longan v. Railroad Co., 253 S. W. 758; Ross v. Wells, 253 S. W. 28; Treadway v. United Rys. Co., 253 S. W. 1037; Betz v. Railroad Co., 253 S. W. 1089. (3) The court erred in giving and reading to the jury at the request of the defendant Instruction 6 relative to the duty of the driver of the automobile, which instruction was so worded as to lead the jury to believe that decedent could not recover if the collision was due to the contributory negligence of the driver of the automobile. The instruction was so worded as to mislead and confuse the jury, and cause them to believe that the negligence of the driver was imputed to decedent, or that decedent in some manner was responsible for the negligence of the driver. Boland v. Frisco Ry. Co., 284 S. W. 141; Ebert v. Railways Co., 174 Mo. App. 45; Treadway v. Railways Co., 300 Mo. 156; Boyd v. Kansas City, 291 Mo. 622. (4) The court erred in giving and reading to the jury of its own motion Instruction 3, which attempted to define the terms ''burden of proof'' and ''preponderance of the evidence.'' Hite v. Railway Co., 225 S. W. 961; Trautmann v. Trautmann, 300 Mo. 314; Brown v. Am. Car & Fdry. Co., 271 S. W. 540. (5) The court erred in permitting the witness Brewster on cross-examination by defendant to state that he would not permit people other than his tenants to use the road over the Magazine farm mentioned in the evidence, as the evidence had already disclosed that this road had been in use for thirty years, and by a continued use for this period of time

had become a public road. Leiweke v. Link, 147 Mo. App. 19; Walker v. Railroad Co., 198 S. W. 441; Sikes v. Frisco Ry. Co., 127 Mo. App. 326; Brown v. Railroad, 20 Mo. App. 432; Roberts v. Railroad Co., 43 Mo. App. 287; Walton v. Railroad, 67 Mo. 56. (6) Under the evidence which disclosed that this crossing had been used by the public for at least thirty years it was then the duty of the railroad company to either ring the bell or blow the whistle at least eighty rods before reaching this crossing, as required by statute. Kennedy v. Railroad, 105 Mo. 270; Kelley v. Railroad, 88 Mo. 534; Petty v. Railroad, 88 Mo. 305; State ex rel. v. Reynolds, 226 S. W. 564. (7) The court erred in refusing to permit plaintiffs' counsel on cross-examination of the witness Fogherty to read certain questions and answers contained in an admittedly correct transcript of the evidence of this witness given in this same accident at a former trial. This was competent for the purpose of impeaching this witness and was a proper method of examination. State ex rel. v. Trimble, 250 S. W. 396; Turnbow v. Railroad, 277 Mo. 644; State v. Meyers, 198 Mo. 255; Wilkerson v. Eiler, 114 Mo. 215. (8) The court erred in refusing to permit plaintiffs to argue to the jury, and in sustaining defendant's objection to plaintiffs' argument to the jury, that the defendant would be responsible for the combined negligence of the defendant and the driver of the automobile if the jury found the death of deceased was caused by the combined negligence of the driver and the defendant. Applegate v. Railroad, 252 Mo. 198; Harrison v. Electric Co., 195 Mo. 606.

*E. T. Miller* and *A. P. Stewart* for respondent.

(1) It was not reversible error to refuse plaintiff's requested Instruction B. This instruction purported to cover the whole case and directed a verdict, but excluded from the consideration of the jury the evidence tending to support the pleaded defense of contributory negligence on the part of deceased. Brownlow v. Wollard, 66 Mo. App. 642; Clark v. Hammerle, 27 Mo. 55, 70; Bank v. Murdock, 62 Mo. 73; Fitzgerald v. Hayward, 50 Mo. 523. (2) No error was committed in refusing plaintiffs' requested Instruction C. The same matter was fully covered in almost identical language by Instruction 2 given at the instance of plaintiffs. Richardson v. Railways, 288 Mo. 258; Varley v. Taxicab Co., 240 S. W. 218. (3) Defendant's Instruction 6 was a correct and proper instruction, and it was not error to give the same. This instruction deals with the negligence of the driver of the automobile as the sole cause of the collision and consequent death of deceased, and is not based on the doctrine of imputed negligence. Fechley v. Traction Co.; 119 Mo. App. 367; State ex rel. v. Bland, 237 S. W. 1020; Kelsay v. Railway, 129 Mo.

372; Landrum v. Railway, 178 S. W. 275; Monroe v. Railway Co., 297 Mo. 633; Henderson v. Railway, 284 S. W. 794. (4) No error was committed in refusing to permit plaintiffs' counsel, on cross-examination of defendant's witness Fogerty, to read detached questions and answers from a transcript of said witness's testimony given on the trial of another case growing out of the same accident, and to ask said witness whether he had so testified. This practice or method of cross-examination of a witness has been condemned by this court in no uncertain terms. Littig v. Heating Co., 292 Mo. 226; Carter v. Railway, 249 S. W. 126; Slaughter v. Mule Co., 259 S. W. 135. (5) Under all the evidence, the jury were justified in finding that defendant was not negligent in respect of giving warning of the approach of the passenger train, and that the negligence of the driver of the automobile was the sole cause of the collision and consequent death of the deceased. Hence, there was no reversible error in admission or rejection of evidence or in the giving or refusal of instructions. Waldman v. Const. Co., 289 Mo. 622; Trainer v. Mining Co., 243 Mo. 359; Fritz v. Railroad, 243 Mo. 62; Keane v. Klausman, 21 Mo. App. 485; Cutshall v. McGowan, 98 Mo. App. 702; Potes v. Pyle, 202 S. W. 446. (6) The verdict being for the right party, error, if any, in the giving or refusal of instructions was harmless. Baustian v. Young, 152 Mo. 317, 325; Cass County v. Bank, 157 Mo. 133; Moore v. Railway, 176 Mo. 528, 545; Mockowik v. Railroad, 196 Mo. 550, 568; Frick v. Ins. Co., 223 S. W. 644; Henry v. Railway, 113 Mo. 525, 538.

DAVIS, C.—This is an action in negligence, instituted by the parents of Mildred Peppers, a minor, who met her death on Armistice Day, 1922, due to defendant's train colliding at a railroad crossing with the automobile in which she was riding as a guest. The jury returned a verdict for defendant, plaintiffs appealing from the judgment entered thereon.

The evidence develops that the collision occurred at a point where a road crosses the defendant's tracks about a half mile west of Eureka station. The tracks there run east and west. On Armistice Day the American Legion was preparing to celebrate the occasion at Legion Hall on Magazine Farm, about three quarters of a mile from the station. To reach the hall, it was necessary to travel the public road running immediately north of and parallel to the tracks. At a certain point the road turned from the public road, south over the tracks. This was a neighborhood affair, the people offering services and contributions. One Hance donated the use of his automobile to convey people to and from Legion Hall. While so doing, he drove his automobile westwardly along the public road to the point where the road turns across the tracks. In the automobile were four girls,

one seated next to the driver, with three others, one of whom was the deceased, in the rear seat.  On parallel tracks defendant maintained and operated trains.  As the driver came to Magazine crossing a standing freight train on the north or westbound track blocked his way, so that he was compelled to stop to await the moving of the freight train.  Shortly thereafter the freight train started and, after moving forward far enough to leave the crossing unobstructed, again stopped.  The driver then proceeded to cross the tracks, moving slowly.  When the front end of the automobile reached the north rail of the eastbound track, a passenger train operated by defendant, running along the eastbound track towards St. Louis, collided with the automobile, killing several of the occupants and injuring others.  From the public road to the tracks is a rise of three or four feet.  The space between the north and south tracks is about nine feet.  Such other facts as are pertinent will later be noted.

I.  Before proceeding to a discussion of plaintiffs' assignments of error, we are confronted with the contention that the cause should have been taken from the jury.  If that be true, the discussion of plaintiffs' assignments of error becomes immaterial, for, absent facts demonstrating the right of recovery, other error becomes non-prejudicial.

Defendant refused to stand on its demurrer to the evidence at the close of plaintiffs' case, offering testimony in its behalf, thus compelling us to consider all the evidence introduced in determining whether the demurrer offered at the close of the whole case should have been sustained.

The contentions run thus:  first, the evidence showing that plaintiffs were not entitled to recover, there was no reversible error in any instruction given or refused; second, the verdict being for the right party, error, if any, in the giving or refusing of instructions was harmless.  Defendant bases its contentions on the ground that it was not negligent and that the negligence of the driver was the sole cause of the collision.

In this connection it becomes necessary to state that the petition avers negligence of both a failure to ring the bell or sound the whistle in approaching the crossing, as provided  in the Revised Statutes, and in negligently failing to give timely and adequate warning of the approach of the train to the crossing.  The answer is a general denial, coupled with a plea of contributory negligence on Mildred Peppers' part in failing to look and listen, and in failing to warn the driver, when by looking and listening she could have discovered the approaching train.

**Whistling Post: Signal for Crossing.**

The petition advises us that plaintiffs invoke both the statute and common-law negligence with respect to ringing the bell and blowing

the whistle. The evidence tends to develop that the particular crossing involved had been maintained for over thirty years, and that for two or three years previous to the collision a whistling post had been maintained 1320 feet west of the Magazine crossing. One witness testified that he was waiting to take the passenger train to St. Louis and that it was late. Another testified that prior to 1916 a railroad crossing sign, "Railroad Crossing, Look Out for the Cars," had been maintained, which burned in 1916, and was located to the right of the approach. The engineer in charge of the train involved in the collision testified that at that time a whistling board was maintained for this particular crossing, and it had been his habit and custom to give the signal at the Magazine crossing whistling post. He drove the train from Cuba to St. Louis every third day. The fireman testified that he saw a man on the back of the freight train giving a signal; that he did not do anything at that particular moment, because he did not know what the man was doing; that he understood his actions when he saw the front wheels of the machine come from behind the car. The evidence further develops that a number of witnesses in a position to listen failed to hear the passenger engine whistle or ring the bell as it approached Magazine crossing, although some testified that they did hear the whistle blow for a crossing a half-mile or more west of Magazine crossing.

The maintenance of the whistling post by defendant for Magazine crossing, without more, cast upon defendant the duty of observing due care and caution. Due care and caution, in this instance, involved the obligation of whistling at the post erected by defendant for that purpose. If the post was erected in compliance with the statute, the failure to whistle was conclusive evidence of negligence. But even if the road crossing the tracks was not public, still the erection of the whistling post by defendant was evidence that defendant considered Magazine crossing dangerous, and as surely obligated it to blow the whistle at the Magazine whistling post as though erected in compliance with the statute. Moreover, both the engineer and the fireman stated that they saw the freight train. The engineer stated that he could not tell whether it was standing or moving. The fireman stated it was standing when they first passed the west end of the train. Both the engineer and the fireman then knew that the freight train was near the crossing and that it obstructed the view of persons crossing the tracks from the public road going to Legion Hall. As it was Armistice Day, with people celebrating, they could expect travelers might cross the tracks behind the freight train. It was their duty to take the ordinary precautions that the circumstances required to protect lives, and the ordinary precautions in the instant case required the continuous ringing of the bell and at reasonable intervals, at least, the blowing of the whistle. This is emphasized by

the fact that at a considerable distance from the crossing the fireman saw the brakeman on the freight train signaling, which ought to have warned him of an unusual situation ahead, and that some peril was lurking. The negative evidence of the failure to blow the whistle or ring the bell was evidence of negligence and of sufficient probative force to carry the cause to the jury as a proximate cause of the collision. This point is ruled against defendant.

II. Plaintiffs' first assignment of error relates to the refusal of the trial court to give to the jury its instruction marked "B." The instruction is as follows:

"The court instructs the jury that if you find from the evidence that on or about the 11th day of November, 1922, the deceased was riding in an automobile, and that the automobile was crossing the defendant's track a short distance west of Eureka, and that while crossing, if crossing, it was struck by one of the defendant's trains and deceased was injured so as to cause her death, and that at the time the deceased was in the exercise of ordinary care; and, if you further find from the evidence that the place where the accident occurred was a crossing over the defendant's tracks that was used by persons and vehicles as a crossing over defendant's tracks, and that it was so used as a crossing, if used, that the defendant, in the exercise of ordinary care, should have anticipated that persons or vehicles might be on and crossing its tracks at said place, then it was the duty of the defendant to give a timely and adequate warning of the approach of its train when one of its trains was approaching said crossing, and the failure of the defendant, if it did so fail, to perform this duty would be negligence.

**Defense of Contributory Negligence.**

"If the jury find defendant guilty of negligence as above set forth and if you further find that the death of deceased was directly caused either by such negligence of the defendant, if negligent, or that such negligence of the defendant, if negligent, combined with the negligence of the driver of the automobile so as to directly cause the death of deceased, then your verdict will be for plaintiff."

The instruction presented plaintiffs' theory of the case and was the only instruction covering their theory. Defendant maintains that the trial court correctly refused it, because, while purporting to cover the whole case, it excluded the pleaded defense of contributory negligence. It will be noted that the instruction contains the phrase "and that at the time the deceased was in the exercise of ordinary care." This raises the question as to whether the instruction sufficiently embraces the defense of contributory negligence. We think it does. If the deceased was at the time of the collision in the exercise of ordinary care, it is plain that she was not guilty of negligence.

While it is true that the instruction does not elaborate facts, still it is of sufficient import to notify the jury that they could not under the instruction find for plaintiffs unless they found deceased in the exercise of ordinary care, that is free from negligence. A clear exposition of the law, relating to the negligence of a guest riding in a vehicle, and the non-imputation of the negligence of the operator of the vehicle to the guest, is found in Ross v. Wells, 253 S. W. 28. The **Imputed Negligence.** cases in this State are in accord in holding that the negligence of the driver of a vehicle cannot be imputed to the guest. Moreover, the cases hold generally that the occupant of a vehicle may rely on the driver's conduct if his conduct was such as to induce a reasonably prudent person to think there was no danger in driving across the tracks; and that one would have the right to rely on the driver's precautions provided that precaution would strike a reasonably prudent person as adequate. The court erred in refusing the instruction.

III. The plaintiffs next complain of the action of the trial court in refusing their instruction marked "C." It is as follows:

"The court instructs the jury that before you can deny plaintiffs a right to recover in this action on the ground that the deceased was guilty of negligence that directly contributed to cause her death, the burden is on the defendant to prove to your reasonable satisfaction **Two Instructions on Same Subject.** by the greater weight of preponderance of the evidence that deceased was guilty of negligence that directly contributed to cause her death, and in determining whether or not deceased was guilty of negligence, you are further instructed that if you find from the evidence deceased was a passenger or guest in an automobile, and that she had no control over the driver, then all the law required of her in order to be in the exercise of ordinary care was that she use such care as an ordinarily prudent person riding in an automobile as a passenger or guest would have used at the time or under the same or similar circumstances."

Defendant's objection to this instruction is that it was covered by Instruction Two, given to the jury at the instance of plaintiffs. Instruction Two merely told the jury in effect that the burden was upon defendant to prove deceased's contributory negligence to their satisfaction. Instruction C is partly of the same import, but goes further and tells the jury what they are to consider in determining whether deceased was guilty of negligence. While the instructions are somewhat similar, they do not cover in their entirety the same ground. It was error to refuse Instruction C.

IV. Plaintiffs' third assignment of error complains of the action of the trial court in giving defendant's Instruction Six, which follows:

"The court instructs the jury that it was the duty of the driver of the automobile in question, before attempting to drive said automobile over defendant's tracks at the crossing in question, to look or

**Negligence of Driver: Sole Cause of Injury.**

listen for the approach of trains on said tracks, and this duty was a continuing one until the crossing was accomplished. So, if you find and believe from the evidence that said driver of said automobile attempted on the occasion mentioned in evidence to drive over said tracks at said crossing without looking and listening, then said driver was guilty of negligence; and if you further find and believe from the evidence that such negligence, if any, of said driver of said automobile was the sole cause of the death of said Mildred Peppers, then plaintiffs cannot recover, and your verdict should be for the defendant."

An examination shows the instruction is technically correct, as far as it goes, but it is misleading. It is true that if the negligence of the driver of the automobile was the sole cause of the death of Mildred Peppers, then plaintiffs cannot recover. The instruction, however, does not embrace the entire situation, for it fails to inform the jury that the driver's negligence cannot be imputed to the deceased in determining whether his negligence was the sole cause of the collision. The whole evidence tends to show more than the negligence of the driver as the sole cause of the collision, for it may be inferred from it that the negligence of the defendant was either a concurring cause or the sole cause. If the instruction had explained to the jury that the negligence of the driver could not be imputed to plaintiff in determining whether his negligence, if any, was the sole cause of the collision, a different situation would have obtained. The instruction as given was error because it was misleading. Our ruling has the sanction of Boland v. Railroad, 284 S. W. 141, and Fisher v. Pullman Co., 212 Mo. App. 280, 254 S. W. 114.

V. Plaintiffs' fourth complaint is based on the giving and reading to the jury the court's Instruction Three as follows:

"By the terms, 'burden of proof' and 'preponderance of the evidence,' the court intends no reference to the number of witnesses

**Burden of Proof.**

testifying concerning any fact, or upon any issue in the case, but simply uses those terms by way of briefly expressing the rule of law, which is, that unless the evidence (as to such issue) appears in your judgment to preponderate, in respect to its credibility, in favor of the party to this action on which the burden of proof (as to such issue) rests, then you should find against such party on said issue."

It is unnecessary to determine the instruction harmful error. It is, however, erroneous and should not have been given. As the cause

will be remanded, the defect may be obviated and a correct instruction given.   The instruction conflicts with the ruling in Hite v. Railroad, 225 S. W. 916; Trautmann v. Trautmann, 300 Mo. 314, 254 S. W. 286, and Brown v. Foundry Co., 271 S. W. 540.

VI.   Whether the court committed harmful error in permitting witness Brewster on defendant's cross-examination to state that he would not permit people other than tenants to use the road over the crossing to the Magazine Farm, we do not decide, **Public User.**   but we do think that the admission of the evidence was irrelevant and immaterial, because the permission of witness at that time to cross over did not determine whether the public had acquired a right of way by user in said road.

VII.   Inasmuch as the record contained evidence tending to show that defendant was guilty of negligence which was the proximate cause of the collision, and that the driver of the automobile was guilty of concurrent negligence, the trial court erred **Concurrent Negligence.**   in refusing to permit counsel for plaintiffs to argue that the defendant would be responsible for the concurrent negligence of the defendant and the driver of the automobile, and that deceased met her death as the result of the concurrent negligence of the defendant and the driver.

VIII.   The final assignment of error challenges the action of the trial court in refusing to permit plaintiffs to examine a witness as to detail questions and answers collated in the deposition of the witness.   The purpose of the examination was impeachment.   The **Deposition for Impeachment.**   trial court interpreted the rule enunciated in Littig v. Urbauer-Atwood Heating Co., 292 Mo. 226, to the effect that the proper method of impeaching a witness by deposition is to offer and read the whole deposition in evidence, refusing to permit counsel to read certain questions and answers from the deposition and ask the witness if he did not so testify.   While there is language in the Littig case seeming to give color to the above interpretation, yet we analyze the opinion as merely condemning the practice of garbling questions and answers about which the witness is interrogated, and intimating that the witness is telling a different tale than that found in the deposition, subsequently closing the case without reading the questions and answers in evidence.   But we read the Littig case as holding that the impeaching party may read that portion of the deposition that tends to impeach the witness and that the opposing party may then read the remainder of the deposition, if any, that is relevant and competent.

It is the garbling of facts and the failure of the examining party to read in evidence the questions and answers about which the witness was interrogated that the Littig case condemns.

The ruling in the Littig case was based on Prewitt v. Martin, 59 Mo. 325; State v. Stein, 79 Mo. 320; State v. Matthews, 88 Mo. 121; Wilkerson v. Eilers, 114 Mo. 245, and Berthold v. O'Hara, 121 Mo. 88. Prewitt v. Martin, supra, relies upon State v. Phillips, 24 Mo. 473, as an authority, in which latter case the court say:

"Shultz, it appears, was examined as a witness for the State. The defendants afterwards, for the purpose of discrediting the witness, read portions of his depositions taken before the magistrate and coroner. The State then read the whole of these depositions. We see no error in this course. As the defendants read parts of the depositions with a view to contradict the witness, the prosecution was entitled to read the whole of them, in order to show his consistency."

HOUGH, J., who wrote the opinion in the Prewitt case, in reviewing the same question in Norris v. Brunswick, 73 Mo. 256, interprets his opinion in the Prewitt case, saying: "The defendants could, with propriety, have been permitted to read such portions of the deposition as they desired to read, and plaintiff would then have been entitled to read the remainder." The same conclusion was reached in Harrison v. Rowan, 3 Wash. C. C. 580, an early case supporting the rule enunciated by HOUGH, J., in Norris v. Brunswick, supra. In Cow. & Hill's notes, 934-5, referred to in State v. Phillips, supra, it is said: "And in such a case, if one party reads part of the deposition in order to show that the witness swore differently from what he now swears, the other may read the whole to show his consistency."

While there is language in some of the above cases on which the ruling in the Littig case was based that would seem to give color to the rule that the impeaching party must read the whole deposition in evidence and cannot seek to impeach a witness by interrogating him relative to detached portions, yet we read and digest the above cases as holding generally that the party attempting impeachment must refrain from garbling facts, must be fair to the witness, the court and the jury, in the examination, and must read in evidence all portions of the deposition that bear on the particular questions and answers about which the witness is interrogated.

State v. Stein, supra, involved the offering of a letter which the trial court refused to allow defendant to introduce for impeachment purposes. It is evident that the question there decided was the competency of the letter, and that the question here involved was not there litigated. State v. Matthews, supra, relying on Prewitt v. Martin, supra, enunciates the rule that if the witness admits that the transcript of his evidence before the grand jury is correct, he can-

not be asked as to statements counsel suggest are in it, but the writing must be read as the only competent evidence of its contents. The court held, however, that the method of examination was not harmful error because defendant did not avail himself of the right to read the testimony to the jury. In Wilkerson v. Eilers, supra, the court, after permitting plaintiff to interrogate witnesses with respect to certain statements made by them in their depositions, refused the offer of defendants to read the depositions in evidence. The court held that when a witness has been examined with respect to the contents of any writing, written or signed, then, as a matter of fairness and justness to him, at least so much of the writing should be read in evidence as has bearing on the questions and answers with respect to which he was interrogated. Berthold v. O'Hara, supra, affirms the ruling in Wilkerson v. Eilers, supra.

We see nothing in the above cases that militates against the procedure, after the proper verification of the deposition, of permitting the party attempting impeachment to ask the witness if this question was not asked him and this answer given and if he did not so testify, provided the question and answer are subsequently read in evidence. Such procedure is just and fair because it permits the court and jury to intelligently understand and assimilate in detail the matters inquired about and affords the witness the opportunity of explaining the answer, if desired. Then, too, reading directly from the deposition and asking the witness if he did not so testify together with the subsequent examination by the opposing counsel tends to eliminate to the greatest extent the garbling of facts and the consuming of time necessary to read the whole deposition, most of which is generally impertinent to the purpose involved. This court, in Rettlia v. Salomon, 308 Mo. 673, 274 S. W. 366, with respect to a portion of a deposition offered as an admission, sanctioned the practice and procedure of reading to the jury a detached portion of the deposition.

In impeaching a witness by use of a deposition, we declare it the proper procedure, after having the witness identify the instrument by identifying his signature, and after exhibiting to the witness the deposition if he asks to see it, to read to the witness, from the deposition a question, or questions, and answer, or answers, and ask him if he did not so testify; and such procedure may be repeated. This permits the witness to explain the answer, if desired. Then the impeaching party must offer and read in evidence all the detail matter about which he interrogated the witness. Following this, the other party may examine the witness to rehabilitate his testimony if he deems it necessary or desires so to do, and may offer the whole deposition or such portions as desired, if not otherwise irrelevant or incompetent. If the witness has not signed the deposition, he may be impeached as for any other parol statement, preferably, however, by

having the reporter taking the deposition read his original shorthand notes. We think the trial court erred in refusing to permit this method of examination.

In view of what we have said, the judgment is reversed and the cause remanded. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.